[L. A. No. 1371.    Department One.—August 2, 1905.]

## JESSIE W. MABB and J. J. MABB, Respondents, v. LYMAN STEWART, Appellant.

WATER-RIGHTS APPURTENANT TO LAND—MORTGAGE AND PLEDGE OF STOCK —ASSESSMENTS OF WATER COMPANY—DUTY OF OWNER.—The owner of land bearing orange and fruit trees to which water-rights represented by shares of stock in a water company were appurtenant, who has mortgaged the land and pledged the stock as security for a debt, is in duty bound to pay the assessments of the water company thereupon.

ID.—ACTION FOR DAMAGES AGAINST PLEDGEE—NEGLECT OF OWNER—DUTY TO PREVENT INJURY—LIMIT OF RECOVERY.—Where, through the neglect of the owner of the land and water stock to pay the assessments, the pledgee of the stock paid the same, and wrongfully caused the water company to withhold the water until the assessments paid by the pledgee were repaid, and during the nonpayment thereof the trees were badly damaged for lack of water, it was the duty of the owner to have prevented the injury so far as possible; and where it appears in an action to recover the damages against the pledgee, that plaintiff might have prevented the injury by procuring other water at small expense, or by paying the assessments, the plaintiff cannot in any event recover a greater amount than that of the assessments demanded by the pledgee.

ID.—MEASURE OF DAMAGES—REASONABLE EXPENSE TO PREVENT LOSS.—Where the damages that otherwise result from a wrong of this sort can be reduced by reasonable diligence and at slight expense upon the part of the party injured, the measure of damages, in case the injured party willfully or negligently fails to use the diligence or incur the expense, is not the serious consequences which actually and naturally result from the deprivation, but is limited to the reasonable expense which would be necessary to prevent further loss, which, in this case, was the amount necessary to be paid to obtain sufficient water to replace that of which the plaintiff was deprived.

ID.—FINDINGS' UNSUPPORTED BY EVIDENCE.—*Held,* that findings in favor of the plaintiff are unsupported by the evidence reviewed.

ID.—IMPUTATION OF KNOWLEDGE—FACTS COMMUNICATED TO ATTORNEY.—It is proper to impute to the plaintiff knowledge of facts communicated to her attorney while attending to her business for her; and letters sent to her attorney must be treated as having been sent to her.

ID.—DEMANDS BY AGENT OF DEFENDANT.—Demands made of the plaintiff by an agent of the defendant having charge of the note and security must be treated as having been made on behalf of the defendant.

ID.—POWER OF ATTORNEY—SECRET LIMITATIONS.—Acts done by an attorney in fact, which are within the authority purporting to be conferred on him by his power of attorney, bind the principal to third persons who are ignorant of any secret limitations on the authority of the agent.

ID.—EVIDENCE—WRITTEN DEMAND FOR WATER.—It was not error to admit in evidence a written demand made by the plaintiff of the agent of the water company to show efforts made by plaintiff to obtain water after notice that defendant had directed it to be withheld until the assessments were paid, and as pertinent only for the purpose of showing her conduct with respect to her obligation to pay the assessments to the defendant.

Id.—Threats not Communicated to Defendant.—Threats made by those turning off the water against the husband of plaintiff, if he should interfere, not communicated to the defendant, were inadmissible against him.

Id.—Meaning of Letter not Admissible.—Evidence as to what the plaintiff wife meant by the language of a letter to the defendant was inadmissible. The language of the letter must be given such meaning as, under all of the circumstances of the case known to the parties who received it, it would naturally bear, and its meaning cannot be controlled by evidence of her intentions not expressed therein.

Id.—Effect of Incompetent Evidence Objected to.—Incompetent evidence admitted over proper objection thereto cannot be considered as evidence of the facts it tends to prove.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Otis & Gregg, and E. H. Joliffe, for Appellant.

Loss which the respondents might have prevented must fall upon them. (*Mabb* v. *Stewart,* 133 Cal. 563, 65 Pac. 1085; 1 Sutherland on Damages, pp. 130, 148; *Lawrence* v. *Porter,* 63 Fed. 62, 26 L. R. A. 167, and note; *Loker* v. *Damon,* 17 Pick. 284; *Sweeney* v. *Montana Central Ry. Co.,* 25 Mont. 543, 65 Pac. 912; *St. Louis etc. Ry. Co.* v. *Ritz,* 33 Kan. 404, 6 Pac. 533; *St. Louis etc. Ry. Co.* v. *Sharp,* 27 Kan. 134.) Evidence as to what the plaintiff meant by her letters to the defendant was inadmissible. (*Mabb* v. *Stewart,* 133 Cal. 562, 65 Pac. 1085; *Beach* v. *Brown,* 20 Wash. 266, 72 Am. St. Rep. 98, 43 L. R. A. 117, 55 Pac. 46.) The findings are against the evidence.

J. L. Murphey, for Respondents.

The plaintiffs were not estopped by the disclaimer of title. (Herman on Estoppel, secs. 702, 792, 797, 798, 991.) The findings are sustained by the evidence. The damages were properly allowed. (1 Sutherland on Damages, pp. 150, 152; *Gilbert* v. *Kennedy,* 22 Mich. 117; *Wolf* v. *St. Louis etc. Co.,* 15 Cal. 319.) A letter is not a contract, and the letter of plaintiff to her attorney may be explained by her, defendant

being a stranger to the letter. (*Wise* v. *Collins*, 121 Cal. 147, 53 Pac. 640; *Rice* v. *Heath*, 39 Cal. 609; *Carpenter* v. *Hathaway*, 87 Cal. 433, 25 Pac. 549; *Dunn* v. *Price*, 112 Cal. 46, 44 Pac. 354; *Darby* v. *Arrowhead etc. Co.*, 97 Cal. 384, 32 Pac. 454.)

SHAW, J.—This case was before this court upon a former appeal, in which a judgment for the plaintiff and an order denying a new trial were reversed. (*Mabb* v. *Stewart*, 133 Cal. 556, [65 Pac. 1085].) The cause was again tried and judgment given for the plaintiff, from which and from an order denying his motion for a new trial the defendant again appeals. The plaintiff J. J. Mabb has no interest in the case except as husband of his co-plaintiff.

The transcript is voluminous, but the case in its main features is simple. It is an action to recover damages caused to the plaintiff's orange and lemon orchard by reason of the action of the defendant in wrongfully depriving the plaintiff of water for the irrigation thereof in the month of August, 1898. The facts necessary to be stated are as follows: The plaintiff was the owner of ten acres of land, upon which there were growing some eight acres of bearing orange and lemon trees, which required irrigation to make them productive and profitable. Appurtenant to the land was a water-right consisting of ten shares of stock in the San Antonio Water Company, the ownership of which conferred a right to receive from the company a certain proportion of its water. The defendant Stewart held a mortgage of twenty-five hundred dollars upon the land, and the ten shares of stock were also pledged as security for the mortgage debt, and they stood in Stewart's name on the books of the company, the right to the water, however, being vested in Mrs. Mabb, subject to the pledge and lien. The expenses of the company were raised by means of statutory assessments upon the stock from time to time. These assessments, as between Mrs. Mabb and Stewart, should have been paid by her, although the stock stood in his name. She failed to pay them and Stewart was compelled to do so in order to prevent a sale after they became delinquent. Upon receiving notice that Stewart was claiming that she had not repaid the assessments previously paid by him, she declared that Stewart was the owner of the stock and that he

was obliged to pay the assessments himself; whereupon Stewart, treating her declaration as a disclaimer of title to the water as well as the stock, gave directions to the company to withhold the water from her lot until the assessments paid by him had been repaid by her. The company immediately acted upon these directions, and instructed its zanjero, or water overseer, to deliver no more water to the plaintiff's land, and gave the plaintiff notice accordingly. By reason of this action the plaintiff's land was deprived of its regular run of water on August 7, 1898, except for about four and three fourths hours. In consequence of this loss of water, the trees were seriously injured, the crop for that year was diminished, and the crop for the succeeding year was also materially lessened, from all of which the court found that the plaintiff had suffered damages to the amount of $2,875.

By several assignments of insufficiency of the evidence the appellant presents the point that this finding with respect to the amount of damages is not supported by the evidence. The particular proposition on which the appellant bases this contention is, that the plaintiff did not use proper diligence to replace the water of which she was about to be deprived, and that, consequently, she cannot claim the enhanced loss due to her own neglect. The rule of law on the subject is well established. It is thus stated in Sutherland on Damages (3d ed., vol. 1, sec. 88) : "The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible. If by his negligence or willfulness he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him." This duty is exacted of the injured party "only when, in view of all the circumstances of the particular case, it is a reasonable duty which he ought to perform, instead of passively allowing a greater damage." (*Ibid.*) A large number of cases are cited in support of these principles. Some cases may be stated in illustration of the principle. In *Dillon* v. *Anderson*, 43 N. Y. 237, a party who contracted for the erection of a building gave notice without good cause, after the work was begun, that he rescinded the contract, and it was held to be the duty of the builder, as soon as the notice was given, if he

acquiesced in the proposed rescission, to have so acted as to save the owner from further damage so far as it was in his power, and that he had no right thereafter to continue the work and thereby destroy the value of the material on hand, and consequently enhance the damages. In *Culbertson* v. *Miller*, 26 Ont. 36, a party who desired to haul ice from the lake over lots on the lake front was prevented from doing so by another party unless he would pay a certain toll which this other party unjustly, but in good faith and without malice, demanded. It was held that the first party should have paid the toll under protest, and that he could not refuse to do so, and thereupon recover of the second party for the loss resulting to his business because of his being prevented from hauling and shipping his ice.

In the present case the defendant gave the directions to the corporation on the 7th of July. According to the regulations of the company, the water to which the plaintiff was entitled was delivered upon the 7th of each month. The order to withhold the water was received too late to prevent delivery for that month, but within a day or two thereafter the plaintiff was informed that Stewart had given the order and that she could receive no more water for her land. It appears further that if she had made any reasonable effort thereafter, and before the next run of water became due, she could have obtained water, equal to the amount to which she was entitled, from the San Antonio Water Company at an expense of thirty dollars; that if she had made any inquiry in regard to the reason for withholding the water, she would have ascertained that it was due to her failure to pay the assessments, and that, under the terms of the order, she could have obtained the water by simply paying the amount of seventy dollars, then due on the assessments. Indeed, the evidence strongly indicates that if Stewart had been informed by her that she was willing to pay the assessments, either then or at the time the mortgage became due, he would have revoked his directions to withhold the water. Stewart, as pledgee, having been compelled to pay the assessments in order to save the stock and the water-right from sale, had the right to demand the repayment thereof from Mrs. Mabb, who was the equitable owner of both the stock and the water. He did not, however, have the right to enforce payment from her by

withholding the water from the land, although being the
owner of the stock upon the books of the corporation, and the
officers of the company having no knowledge of the rights of
Mrs. Mabb, Stewart had the apparent power to control them
with respect to the delivery of the water. His action in with-
holding the water was therefore without right. But, on the
other hand, when Mrs. Mabb was informed that he had given
directions to withhold the water she was not justified in fur-
ther refusing to pay the assessments, nor was she justified in
passively allowing the time to lapse, in the unwarranted ex-
pectation that Stewart would change his mind and allow the
water to be delivered to her land without payment of the
assessments, when, by reasonable effort and slight expense,
she could have obtained water in place of that of which she
was deprived by Stewart, or by complying with the order
could have secured the water as usual. Where the damages
that would otherwise result from a wrong of this sort can be
reduced by reasonable diligence and at slight expense upon
the part of the party injured, the measure of damages, in
case the injured party willfully or negligently fails to use the
diligence or incur the expense, is not the serious consequences
which actually and naturally result from the deprivation,
but is limited to the reasonable expense which would be neces-
sary to prevent further loss. (1 Sutherland on Damages, 3d
ed., sec. 88.) Under this rule the measure of damages in this
case was the amount that it would have been necessary for her
to pay to obtain sufficient water to replace that of which she
was deprived. This would not, under any circumstances, ex-
ceed the amount of the assessments demanded of her by Stew-
art.

The plaintiff claims, and the court seems to have sustained
her in this respect, that she had no knowledge of Stewart's
demand; that she did not know, and had no means of know-
ing, the reasons for withholding the water, and believed that
it was entirely due to Stewart's malice, arising from some
difficulty with respect to church matters, having nothing
whatever to do with the contract rights involved. This claim
is manifestly insincere and does not excuse her. Mrs. Mabb
bought the land of one Merriman in 1896. Merriman had
executed a mortgage upon the land to Stewart for twenty-
five hundred dollars, which had been by Stewart pledged to

one McCulloch as collateral security for a loan from McCulloch to Stewart, and at the time of Mrs. Mabb's purchase it was held by McCulloch. The agreement between her and Merriman was, that she should assume payment of the Stewart mortgage, and that this agreement should be consummated by a release of the mortgage of Merriman and the execution of a new mortgage to Stewart by Mrs. Mabb. This agreement was carried out, and in pursuance of it the mortgage in question here was executed. Mrs. Mabb was informed at the time that the new mortgage would be held by McCulloch as collateral security for his loan to Stewart. She knew that the stock was in the name of Stewart and that it belonged to her land; indeed, it was expressly mentioned in the deed from Merriman to her. She knew that the expenses of the company in carrying on its water system were met by assessments upon the stock, and she is presumed to know that, if the assessments were not paid, the stock could be advertised and sold under the statute, and that the result would be that her land would lose its water-right and become practically worthless. She knew that the affairs of McCulloch were managed by an agent, Mr. J. S. Torrence. She was informed by Torrence in February, 1898, that the water assessments had not been paid. She must be presumed to know that it was her duty to pay them. Instead of responding to this duty, she immediately disclaimed ownership of the stock and insisted that Mr. Stewart was the owner of the stock, and must pay the assessments. She knew that the assessments had been made and had not been paid by her, and she was informed that the direction to withhold the water had been given by Stewart. She was again informed by Torrence on the 23d of July— more than two weeks before the water was actually withheld —that it was her duty to pay these assessments. She must be presumed to know that the actions of Torrence in regard to this matter were taken on behalf of himself and Stewart also. Torrence, as the agent of McCulloch, had no relation to the case whatever, except as the holder of the note and mortgage given by her to Stewart. Her actions and conduct throughout the affair indicate a desire on her part to evade meeting her just obligations. Under all these circumstances, upon being informed that Stewart had given directions to withhold the water, she was charged with knowledge

that the water was withheld on account of her failure to pay the assessments. She was at least put upon inquiry as to the cause, and upon the slightest inquiry could have ascertained the exact cause, and would have learned that the small sum of seventy dollars would secure her the water at the regular time. The evidence shows that she did demand of the water company the delivery of the water at the regular time, but that she failed altogether to make any inquiry about the cause of withholding it, willfully preferring rather to remain in ignorance and suffer the consequences of the loss of water than to do her reasonable duty in the matter and meet her just obligations. In view of this willful neglect, she is not entitled to recover the enhanced damages caused thereby, and which could have been prevented by the exercise of reasonable diligence and good faith on her part. It is proper to add that we have imputed to the plaintiff knowledge of the facts which were communicated to her attorney while he was attending to her business for her; and that there was in Stewart's conduct nothing more blameworthy that that he was endeavoring by unwarranted means to enforce a just demand.

The finding that Stewart did not, prior to August 7, 1898, demand of Mrs. Mabb the repayment to him of the assessments previously paid by him is not supported by sufficient evidence. The letters sent to her attorney must be treated as having been sent to her. Torrence, as agent of McCulloch, had charge of the note and mortgage, and his demands must be treated as having been made on behalf of Stewart. In view of these facts it cannot be said that no demand was made on behalf of Stewart for the repayment of the assessments.

The court finds that the plaintiffs did not understand that they were to pay the water assessments until the principal of the mortgage became due. This finding is entirely unsupported by any competent evidence. The conversation that took place between the plaintiffs and Merriman, at the time they purchased his land and agreed to renew his mortgage, was in the absence of Stewart, and was not competent evidence of any agreement whatever, so far as Stewart was concerned. There was no other evidence upon which this finding could be supported. The testimony of the plaintiffs as to their understanding and belief was incompetent evidence against Stewart.

The court further found that the plaintiff had no notice or knowledge that Torrence was acting for or on behalf of Stewart in any matter. This finding is unsupported by the evidence. The plaintiffs themselves testified that at the time of the purchase from Merriman they were informed that their mortgage would be transferred to McCulloch to hold as collateral security for a debt due him from Stewart. They knew from the beginning that Torrence was acting as the agent for McCulloch in respect to these matters. This necessarily carried knowledge that Torrence, so far as he was acting with respect to the payment and collection of the mortgage, and matters connected therewith, was acting on behalf of Stewart.

The finding that the plaintiff Mrs. Mabb did not intend to authorize her attorney to disclaim her ownership in the stock is not supported by competent evidence. He was acting as her attorney, and her letter to him was not accompanied by any statement as to her secret intentions. It must be taken as giving him such authority as it purported to give on its face, in so far as that authority was acted upon by her attorney in his communications to the agents of the defendant. It appeared upon its face to give such authority, and it is immaterial what her intention was, unless that intention was communicated to the defendant or his agents. There is no evidence that they had any knowledge or information of her secret intentions.

The finding that the plaintiffs did not understand and that Stewart did not believe that they had refused to pay the water assessments is not supported by the evidence. The letters written by Mrs. Mabb and her attorney in regard to the matter plainly show that she did refuse to pay the assessments, and there is no evidence whatever that Stewart did not believe that she intended the necessary effect of her language.

Some errors of law in the admission of evidence remain for consideration. It was not error to admit the written demand for water, delivered by Mrs. Mabb to Shepherd, dated July 23, 1898. It was admissible to show the efforts made by the plaintiff to get water after having received notice that Stewart had directed it to be withheld. The direction of Stewart to Shepherd was to withhold the water ''until the assessments are paid.'' This would imply that Stewart intended to authorize Shepherd to receive for him the money due him upon

the assessments theretofore paid by him, and, upon such payment, to deliver to Mrs. Mabb the water. Upon this ground the demand was admissible, as were also the subsequent and accompanying negotiations between Mrs. Mabb and Mr. Shepherd with regard to the delivery of the water. This is not contrary to what was said in the opinion upon the former appeal concerning the agency of Shepherd. The particular language of the order given by Stewart to the agent was not under consideration in that case. It is proper to say, however, that the evidence as to these negotiations was pertinent only for the purpose of showing her conduct with respect to her obligation to pay the assessments to Stewart. The testimony as to what became of the water on the 7th of August, after it was shut off from the land of Mrs. Mabb, was irrelevant, except so far as it might tend to show that the water was then delivered to the land of Stewart. Evidence of the threats made at the time by those who were engaged in turning off the water, to arrest the plaintiff J. J. Mabb in case he should interfere, were not brought home to Stewart, nor shown to have been authorized by him, and they were therefore irrelevant and should have been excluded. The testimony of Mrs. Mabb as to what she meant by the language of her letter of February 18th to Mr. Murphy was immaterial and incompetent. It is not claimed that the defendant or any of his agents had any knowledge with respect to her understanding of her own language. The attorney in following her instructions wrote a letter to Mr. Torrence, who was acting on behalf of Stewart, in which he used substantially the same language which she had used in her letter to him. This language must be given such meaning as, under all the circumstances of the case known to the parties who received it, it would naturally bear, and that meaning cannot be controlled by any opinion of Mrs. Mabb as to what ideas she intended to convey in her letter to Mr. Murphy. He had the ostensible authority to make the declarations contained in his letter, and any secret limitations thereon not communicated to the other party are immaterial and incompetent as testimony in the case.

There are a number of other propositions discussed in the briefs, but we consider them unimportant and not likely to arise upon a third trial.

The incompetent evidence we have referred to was admitted

over the objection of Stewart, based on that ground, and hence it cannot be considered as evidence of the facts it tends to prove.

The judgment and order are reversed.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.