[Sac. No. 2461. Department One.—February 5, 1918.]

JOHN ALFRED HENRICI, Respondent, v. SOUTH FEATHER LAND AND WATER COMPANY (a Corporation), Appellant.

RECORDING—CONTRACT TO FURNISH WATER FOR IRRIGATION—FAILURE TO ACKNOWLEDGE—CONSTRUCTIVE NOTICE.—An unacknowledged agreement by a water company to furnish water for irrigation, does not, although copied in a book of the county records, impart constructive notice to another corporation which subsequently purchases the water system.

WATER AND WATER RIGHTS—VENDOR AND VENDEE—EASEMENT OF PUR-
CHASER OF LAND.—One who purchases land from a corporation en-
gaged in the sale or rental of water as a public service, which con-
tracts with the purchaser to supply water for irrigation has an
easement consisting of the right to the flow and use of the water on
his land.

ID.—PURCHASE OF WATER SYSTEM—NOTICE OF EXISTING EASEMENTS—
EVIDENCE.—Where, in an action by the owner of land against a
water corporation for damages, for refusal and failure to furnish
water for irrigation in accordance with a contract made by the de-
fendant's predecessor on a sale of the land in question, it appeared
that the defendant corporation purchased the water system from an-
other corporation engaged in the sale of and rental of water as a
public service and that at the time of the purchase the water system
was connected by pipes and lateral ditches with plaintiff's lands, the
trial court was warranted in drawing the inference that the physical
conditions were such as to indicate to anyone inspecting the system,
that water had been and could be furnished therefrom to plaintiff's
land.

ID.—NOTICE OF CONTRACT THAT MIGHT BE LEARNED FROM INQUIRY.—In
such case the purchasing corporation was charged with notice of a
contract, the existence and terms of which might have been disclosed
by inquiry.

ID.—WATER CONTRACT AN INTEREST IN REAL PROPERTY.—A contract by
a water company to furnish water for irrigation of lands at an
agreed price is a contract to sell a right or interest in real property.

ID.—PURCHASER OF WATER SYSTEM BOUND BY EXISTING CONTRACTS.—
One purchasing a water system with notice, actual or constructive, of
a land owner's interest under such a contract takes subject to the
contract.

ID.—CONTRACT INDEFINITE AS TO QUANTITY OF WATER.—Where such a
contract to furnish water for irrigation on lands mentions no specific
quantity, the amount to be supplied is the amount reasonably neces-
sary for irrigating the lands.

ID.—ACTION FOR DAMAGES FOR REFUSING TO SUPPLY—DEMAND AND
TENDER—FAILURE TO DEMAND SPECIFIC QUANTITY.—Where in an ac-
tion against a water company for damages for refusal to supply
water for irrigation, in accordance with a contract by the company's
predecessor, it appeared that after the defendant came into posses-
sion of the system it undertook to establish a new system of rates,
and plainly and unequivocally declared that it would not furnish
water except upon payment of the new rates, the defendant was not
excused from the obligation to furnish water because plaintiff had
not made a demand for a specific amount, and had not tendered pay-
ment in advance at the contract rate.

ID.—TENDER OF PAYMENT IN ADVANCE UNNECESSARY.—Where in such
  case the contract provided that payment should be made "monthly on
  demand," payment or offer of payment by the plaintiff of the con-
  tract rate in advance was not required.

ID.—DAMAGES FOR FAILURE TO SUPPLY—DUTY OF PLAINTIFF TO MINIMIZE
  AMOUNT.—In such an action the plaintiff is not entitled to recover
  as damages the loss sustained through the diminished value of his
  crops, and the destruction or decay of his trees and vines through
  lack of the water contracted for, since by paying the excessive price
  demanded, without conceding its correctness, he could have saved his
  trees, vines, and crops and reduced his damage to a comparatively
  trifling sum.

APPEAL from a judgment of the Superior Court of
Butte County. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

C. E. McLaughlin, and C. P. McLaughlin, for Appellant.

W. H. Carlin, for Respondent.

SLOSS, J.—The plaintiff, owner of a tract of land in
Butte County, containing about twenty acres, brought this
action to recover damages for the failure and refusal of the
defendant, a water company, to furnish water for the irri-
gation of his land. The trial was had before the court sit-
ting without a jury, and the court rendered judgment in
favor of the plaintiff for $1,176. The defendant appeals
from the judgment, bringing up the evidence by means of
a typewritten transcript.

The defendant is the successor in interest of South Feather
Water and Union Mining Company (hereinafter termed the
"old corporation"), which was engaged, among other things,
in the business of furnishing and supplying water to the
public for hire. On the ninth day of October, 1884, the old
corporation, then the owner of the twenty-acre tract above
mentioned, made an agreement with the plaintiff for the sale
of said land to him, conveyance to be made upon the com-
pletion of the deferred payments provided for. Upon the
paper containing the contract of sale, and following the signa-
tures of the vendor and vendee, there was appended an addi-
tional agreement, executed at the same time by the same
parties, and reading, except for the signatures, as follows:

"ADDENDA. The South Feather Water and Union Mining Company hereby agrees to furnish water for irrigation on the lands described in the within agreement at the rate of Ten Cents per inch per day of Twenty Four hours each, whenever water is flowing in its ditch adjacent to said lands, and said John Alfred Henrici or his assigns hereby agree to pay for all water so furnished by said company for said purposes, said sum of Ten Cents per inch per day of Twenty four hours monthly on demand.

"Witness the hands and seals of said parties this ninth day of October, A. D. 1884."

The plaintiff went into possession under his contract of sale. The main ditch of the old corporation then ran within about one thousand feet of the land so contracted to be sold. A lateral ditch and pipes were constructed to connect the main ditch with the land. The old corporation thereupon commenced to supply water to the plaintiff upon the terms stated in the agreement above quoted. The plaintiff completed his payments on the land, and in October, 1888, received from the old corporation a deed conveying to him the land described, with its appurtenances. The deed made no specific reference to any agreement for the furnishing of water. After the making of the deed, as before, the old corporation furnished water to plaintiff's land upon the terms stated in the agreement. The plaintiff had planted his land to fruit trees and vines, and applied for water as he needed it for irrigation, paying ten cents for each inch served for the number of days during which the use continued. In 1909 the old corporation conveyed all of its water system and other property to the defendant, which has ever since been carrying on the business of a public service corporation supplying water to the public for hire. When the defendant came into possession of the system, it undertook to establish a new system of rates, under which it made a flat charge of $36.50 per annum for one inch of water, allowing the user to cumulate the use during any month, e. g., to use five inches for six days in the month, or three inches for ten days, or ten inches for three days, and so on. The effect of the new rule, however, was to require a consumer to pay a minimum of ten cents for every day in the year, whether he used water or not. The plaintiff demanded the right to have water served to him upon the terms on which he had re-

ceived it during the twenty-five years from 1884 to 1909. The defendant refused to furnish water except upon payment of the new rate. In consequence, no water was furnished to the land, and plaintiff brought this action in 1914 to recover damages for the refusal to furnish him water during the four preceding seasons.

The main question is whether the defendant was bound to furnish water at the rates agreed upon between its predecessor and the plaintiff. Underlying this is the preliminary inquiry whether the defendant, in purchasing the water system of the old corporation, took with constructive notice of plaintiff's rights under his contract. It did not have such notice from the records, since the contract, though copied in a book of the records of Butte County, had not been acknowledged. There was, therefore, no such legal recordation as would impart constructive notice. (Civ. Code, sec. 1213; *McMinn* v. *O'Connor*, 27 Cal. 239, 245; *Lee* v. *Murphy*, 119 Cal. 364, 370, [51 Pac. 549, 955].) But the purchaser of real property is bound to take notice of all easements or servitudes which are "apparent" upon an inspection of the property. (*Rubio Cañon L. & W. Assn.* v. *Everett*, 154 Cal. 29, [96 Pac. 811].) As between the plaintiff and the old corporation, the right to the flow and use of the water constituted an easement in favor of plaintiff's land. (Civ. Code, sec. 552; *Farmer* v. *Ukiah W. Co.*, 56 Cal. 11; *Franscioni* v. *Soledad L. & W. Co.*, 170 Cal. 221, 224, [149 Pac. 161]; *Southern Pac. Co.* v. *Spring Valley Water Co.*, 173 Cal. 291, [L. R. A. 1917E, 680, 159 Pac. 865].) At the time of the defendant's purchase, the water system was connected by lateral ditches and pipes with the plaintiff's land. The trial court was warranted in drawing the inference that the physical conditions were such as to indicate to anyone inspecting the system that water had been, and could be, furnished therefrom to such land. Undoubtedly the defendant knew that its grantor had been engaged in the sale or rental of water as a public service, and that those who were receiving water from it had a right to demand continued service on proper terms. The law charged it with notice of all further facts which it might have ascertained by proper inquiry. (Civ. Code, sec. 19; *Tynan* v. *Kerns*, 119 Cal. 447, 451, [51 Pac. 693].) Knowing, then, that plaintiff's land had some kind of a right to receive water from the system which it was

buying, the defendant was put on inquiry as to the nature, extent, and conditions of such right. Under the law, the water might have been furnished under rates fixed by public authority. In the absence of any such regulation (and there had been none during the period here involved), the service might have been rendered either on rates fixed by the corporation, or on terms agreed upon by it with the customer. (*Southern Pac. Co.* v. *Spring Valley Water Co., supra.*) The purchaser of the system had no right to assume either that water had been furnished under an agreed rate, or that it had not. The fact could as well be one way as the other. The court was authorized to conclude, therefore, that the dictates of prudence required the defendant, on purchasing the system, to make inquiry to ascertain the terms upon which any prior consumer was receiving the service. Such inquiry would have disclosed that the water had been furnished to the plaintiff under a rate fixed by contract.

If the defendant had notice of the contract of the old corporation, it was bound by the terms of that contract. The case is governed by the principles laid down in *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716, [15 L. R. A. (N. S.) 359, 93 Pac. 858]. There the court, in speaking of a similar situation, said: "The agreement is, in legal effect, an agreement to sell a right or interest in real property. . . . Hence, the agreement to furnish the necessary water from the canal from year to year, during the time specified, and to deliver it upon the . . . lands for the irrigation thereof, for an agreed price, was, in substance and effect, an agreement for the sale of real property of the canal company. Such an agreement, with all its terms, is binding, not only upon the maker, but upon all persons who subsequently acquire the maker's title to the property agreed to be sold, with notice of the agreement. The plaintiff [water company], as we have seen, bought with notice, and it is therefore as much bound to comply with this part of the agreement according to its terms as if it had executed the same." This reasoning is equally applicable to the present case. It is true that the contract before us does not provide, as did that considered in the Stanislaus case, that it should have "the force and effect of a covenant running to and with" the land of the consumer and the canal of the Water Company. But, as was held in the case cited, the language quoted was not effective

to make the covenant one running with the land, nor did it create a lien on the canal. (See *Fresno Canal etc. Co.* v. *Rowell*, 80 Cal. 114, [113 Am. St. Rep. 112, 22 Pac. 53].) The real ground of decision was that the agreement to furnish water conferred upon the land owner a specific right or interest in real property, affecting the system of the Water Company, and that anyone purchasing such system with notice, actual or constructive, of the land owner's interest, took subject to it. This, as we have seen, is the precise situation here.

It is argued that the agreement is too uncertain to be capable of enforcement. But we think there is no merit in this contention. No specific amount of water was mentioned, but the company agreed "to furnish water for irrigation on the lands described in the within agreement." The fair meaning of this language is that the amount to be supplied was that reasonably necessary for irrigating the lands. This, apparently, was the interpretation put upon the contract by the parties to it, and they had no difficulty in acting on such interpretation for twenty-five years. In *Stanislaus Water Co.* v. *Bachman, supra,* the contract merely bound the company to furnish "a flow of water sufficient to fully irrigate said land as often as necessary during each year." It was held to be sufficiently certain.

The obligation to furnish water at the agreed rate was unlimited in time, and continued until the rate was superseded by order of a public body vested with the power of regulating the service.

There is no force in the claim that the defendant was excused from the obligation to furnish water because plaintiff had not made a demand for a specific amount, and had not tendered payment in advance at the contract rate. The position of the defendant, plainly and unequivocally declared, was that it would not furnish water except upon the rates prescribed by it. It is perfectly apparent that a demand, however specific as to amount, would have been unavailing so long as plaintiff was not willing to pay the rates demanded. On familiar and well-settled principles the defendant cannot, therefor, avail itself of any indefiniteness in the demand, or of a failure to offer the contract price. Furthermore, so far as tender is concerned, the contract did not require the plaintiff to pay or offer to pay in advance.

The provision was that payment should be made "monthly on demand." If defendant was, as we have seen it was, bound to furnish water under the terms of the contract, it could not refuse plaintiff's demand for want of an offer to make payment before he was required to make it.

The defendant makes the further contention that the evidence does not support the finding with respect to damage. We think this position is well taken. The land had been without water for four years. The plaintiff introduced testimony to the effect that the lack of water had greatly diminished both the quantity and the value of his crops of fruit and grapes, and had caused many of his trees and vines to die. The damage claimed consisted of the loss on these items, and the finding represented the conclusion of the court with respect thereto. It is manifest, from the record, that the defendant did not at any time refuse absolutely to furnish water. It was always ready to supply plaintiff's land upon payment of the rates demanded by it. This was perfectly understood by the plaintiff, who was well aware that he could get the water by complying with the defendant's demands. His right to water was not disputed. The one point of controversy was whether he should pay the rates which he had been paying theretofore, or the rates fixed by the defendant. If the plaintiff had continued to use a quantity of water approximating that received by him in prior years, paying the defendant what it asked, the cost to him would have amounted, in each year, to only a few dollars more than the sum payable under the contract. By paying the excessive price without conceding its correctness, he could have saved his trees, vines, and crops, and reduced his damage to a comparatively trifling sum. This it was plainly his duty to do. "The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible. If by his negligence or willfulness he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him." (1 Sutherland on Damages, 4th ed., sec. 88; *Ash* v. *Soo Sing Lung, ante,* p. 356, [170 Pac. 843]; *Cullerton* v. *Miller,* 26 Ont. 36, 45; *Dillon* v. *Anderson,* 43 N. Y. 231, 237.) The principle has been applied by this court in a case similar to the one at bar.

CLXXVII Cal.—29

(*Mabb* v. *Stewart,* 147 Cal. 413, 418, [81 Pac. 1073].) There, as here, the action was to recover damages for the withholding of water from plaintiff's land. It appeared that the plaintiff, Mrs. Mabb, could have obtained the water by paying a small sum which was not in reality due from her. The decision was that she could not, in this state of facts, hold the defendant for the loss of crops due to lack of water. The court referred to the passage from Sutherland on Damages, quoted above, and went on to say that "under this rule the measure of damages in this case was the amount that it would have been necessary for her to pay to obtain sufficient water to replace that of which she was deprived." So, in this case, the plaintiff could not hold the defendant responsible for the ruin caused by his own act in allowing his trees and vines to go without water for four years, when, as he well knew, he might, at slight cost, have secured the water and reduced his damage to almost nominal proportions. The rule under discussion is not rendered inapplicable by the circumstance that the defendant itself demanded the excessive payment. This was the situation in *Cullerton* v. *Miller, supra,* a case cited with approval in *Mabb* v. *Stewart.*

We find no other point requiring discussion.

The judgment is reversed.

Shaw, J., and Richards, J., *pro tem.,* concurred.

Hearing in Bank denied.