HUNTINGTON BEACH UNION HIGH
SCHOOL DISTRICT, Plaintiff,

v.

CONTINENTAL INFORMATION SYS-
TEMS CORPORATION, etc., et
al., Defendants.

No. CV 77-3942-AAH.

United States District Court,
C. D. California.

June 22, 1978.

Rutan & Tucker by David C. Larsen, Santa Ana, Cal., for plaintiff.

Lillick, McHose & Charles by Thomas F. Melchior, San Diego, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

### FINDINGS OF FACT

1. HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT is a Union High School District organized and existing by virtue of the laws of the State of California, and is authorized by its Board of Trustees to bring this suit.

2. CONTINENTAL INFORMATION SYSTEMS CORPORATION (hereinafter referred to as "CIS") is a New York corporation, authorized to do and doing business in the State of California.

3. Defendants ERIC WILL, DEAN MCGAAN, and LOU SKAVIENSKI are and were authorized agents to act on behalf of CIS in dealing with HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT.

4. Pursuant to authorization of the California Education Code, plaintiff gave notice inviting bids on Bid No. 327 on April 22, 1977, setting forth general conditions and specifications for the purchase of data processing equipment, including an IBM System 370/145.

5. On May 11, 1977, defendant CIS timely submitted a response to Bid No. 327, which was signed and authorized, bidding on an IBM System 370/145, in the amount of $332,939.00, plus tax, for a total of $352,915.34.

6. On May 24, 1977, the Board of Trustees of HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT took action to award Bid No. 327 for an IBM System 370/145 to defendant CIS. Defendant CIS was duly notified of this action.

7. Both prior to and after the award of the bid, Defendant ERIC WILL represented and informed plaintiff's agents that defendant CIS had the ability to meet their bid response, and in fact would deliver an IBM System 370/145 within the July time frame set forth in the bid specifications.

8. In reliance on defendants' representations, plaintiff awarded bid No. 327 to defendant CIS, and so informed other bidders.

9. Defendant CIS had until July 31, 1977, to perform its obligations under the bid specifications and general conditions, i. e., defendant CIS had until the end of July to deliver, install, and have completely operational a 370/145 System.

10. When plaintiff was informed by a third party that the serial number set forth in defendant CIS's bid response was not available and confronted CIS and defendant ERIC WILL with this fact, defendant WILL informed the plaintiff of a second serial number and told the plaintiff that that serial number would be available in July. In reliance upon said representations, plaintiff continued to expect delivery from defendant CIS.

11. All bid responses on Bid No. 327 remained valid under the terms of the bid for a period of sixty days after the date specified for the receipt of the bids, or until July 12, 1977.

12. The parties reached a meeting of the minds as to all essential terms of the contract to be performed which were manifested in the bid documents, the written and oral communications between the parties, and the proposed terms incorporated in

plaintiffs' Exhibits 10, 11, 12 and 13, which are incorporated herein.

13. The agreement reached between the parties was for defendant CIS to supply any model 370/145 IBM computer to plaintiff, and was not to provide a particular serial number; the serial number was of interest to plaintiff only so that plaintiff could check the background of the particular computer to be supplied.

14. In an effort to verify the validity of the second serial number and its condition, plaintiff was informed during the last week of June, 1977, by a third party, that the second serial number was not in the possession of CIS. On June 29, 1977, plaintiff requested that if defendant would be unable to supply the second serial number, that defendant so notify plaintiff within 24 hours. Defendant did not notify plaintiff until July 6, 1977, that the second serial number was unavailable.

15. As of June 30, 1977, defendant CIS informed plaintiff by its inaction regarding the second serial number and by its lack of confirmation that it would supply the second serial number, that it would not be able to meet the bid as accepted. On July 6, 1977, defendant CIS informed plaintiff expressly that the second serial number would not be available to the District, but that a third serial number might become available, and that there was a 50–50 chance that defendant could deliver the third serial number pursuant to the general conditions of Bid No. 327.

16. On July 20, 1977, defendant CIS expressly informed plaintiff in writing that defendant CIS would not meet their bid response as accepted by the District.

17. Those bid responses to Bid No. 327 which were not accepted by plaintiff District expired on July 12, 1977, by the terms of the Invitation to Bid.

18. After defendants' July 20, 1977, notification that it could not perform, plaintiff District attempted to award the bid to the second low bidder on Bid No. 327, Pioneer Computer Marketing Corporation, but was informed that Pioneer would no longer honor its bid. Pioneer was under no obligation to do so in that the bid had expired by July 12, 1977.

19. Thereafter, on or about August 4, 1977, plaintiff rebid the matter under Bid No. 339, and awarded the bid to the lowest responsible bidder, Pioneer Computer Marketing Corporation, in the amount of $389,000.00, plus tax, for a total of $412,340.00. Two bidders under Bid No. 339 were lower than Pioneer, but these lower bidders were non-responsive to Bid No. 339, and were duly and properly rejected.

20. Because of defendant CIS's failure to perform and the necessary delay from rebidding the matter, the District was not able to obtain delivery of a System 370/145 until October, 1977.

21. In reliance upon the bid response of defendant CIS and the acceptance of that bid, plaintiff District ordered and accepted delivery of peripheral equipment to be used with an IBM System 370/145. The ordering and use of such peripheral equipment was to be reasonably anticipated by defendants. This equipment was delivered in July, and the District was required to make payments for that equipment for the months of July, August, and September, without obtaining any benefit or use of that equipment. Furthermore, because of the delay of the delivery of the 370/145, the District was not able to implement programs which had been planned for the school year 1977–78, and it was necessary to hire an additional programmer and to reprogram many items for the preexisting electronic data processing system. In incurring the above expenses, including expenditures for peripheral computer equipment and costs of reprogramming due to delay, plaintiff justifiably relied upon defendants' representations, both oral and in writing, and expended a total of $9,782.10. Plaintiff at no time received any benefit or use because of these expenditures, and was damaged in this amount because of defendants' non-performance.

22. The increased purchase price of the computer under Bid No. 339, over and above that bid by defendant CIS under Bid No. 327, together with tax, is $59,424.66.

23. The second low bidder under Bid No. 327 was Pioneer Computer Marketing Corporation, whose bid under Bid No. 327 was $365,318.40, including tax. The increased purchased price of the computer under Bid No. 327, had plaintiff awarded the bid to the second low bidder upon learning of the refusal of defendant CIS to perform, over and above that bid by defendant CIS under bid No. 327, together with tax is $12,403.06.

24. By July 6, 1977, when plaintiff was told that defendant CIS would be unable to deliver the second serial number, two reasonable courses of action were open to plaintiff to mitigate its damages: (a) Plaintiff could have declared defendant CIS in breach and awarded to the second low bidder under Bid No. 327; or (b) plaintiff could have waited until the time for defendant CIS's performance, and upon CIS's non-performance, could have rebid the project. Although plaintiff elected to proceed under the latter course of action, it was reasonably foreseeable to plaintiff that the lesser amount of damage would have been sustained had plaintiff instead called a special meeting of the Board of Trustees of the District and awarded the contract to the second low bidder under Bid No. 327, Pioneer Computer Marketing Corporation, before the bids thereunder had expired.

25. The parties, at all times mentioned in the pleadings, were acting in good faith with each other.

26. The agreement between the parties did not contemplate a limitation of any damages suffered by any of the parties, except in the case of maintenance warranties. The limitation on incidental or consequential damages referred to in paragraph 3 of the proposed agreements of both plaintiff and defendant CIS (see plaintiff's Exhibits 12 and 10) is applicable only to the maintenance clause.

27. The bid response of defendant CIS provided that they would deliver a particular computer subject to prior sale. At no time between the submittal of that bid response and its acceptance did the defendants sell that particular computer.

Moreover, the "subject to prior" sale language does not mean subject to prior acquisition, nor does it allow defendant CIS an excuse of its contractual obligations.

## CONCLUSIONS OF LAW

1. Upon acceptance of the bid response, an irrevocable option was created between the plaintiff and defendant CIS to enter into a contract containing all the terms and conditions set forth in the bid proposal. The oral conversations, written communications, and those proposed terms found in plaintiff's Exhibits 10, 11, 12 and 13 represent the terms upon which the parties had a meeting of the minds, and by reason of this agreement upon the essential terms of the agreement and because of the legal concept of promissory estoppel, defendant CIS was bound to perform by delivering a 370/145 IBM computer to plaintiff District by the end of July, 1977.

2. There were no conditions precedent to the creation of the contract which were not fulfilled.

3. Although the parties contemplated the ultimate execution of a more formal writing, the acceptance of defendant CIS's bid by plaintiff resulted in a binding agreement since none of the material terms of the parties' agreement remained unsettled or required future determination.

4. The agreement between the parties was not rendered unenforceable by the Statute of Frauds.

5. The agreement between the parties was supported by adequate consideration; in any event it is enforceable under the doctrine of promissory estoppel.

6. Defendant CIS breached its agreement with plaintiff by failing to deliver as provided for by the bidding documents.

7. At no time did plaintiff ever waive performance of the agreement by defendant.

8. There was no material mistake of fact or law that excuses performance by defendant.

9. There was no fraud or negligent misrepresentation on the part of any party hereto.

10. No malice was proved which would support an award of punitive damages.

11. Liability exists only on the part of defendant CIS; liability does not extend to the individual defendants.

12. Plaintiff suffered general damages in the amount of $12,403.06 by defendants' breach of the agreement, upon which plaintiff is entitled to prejudgment interest of seven percent from June 30, 1977, until entry of judgment herein and thereafter until paid.

13. Plaintiff suffered incidental and consequential damages of $9,782.10 by defendant's breach of the agreement, upon which plaintiff is entitled to interest at the legal rate from the date of judgment until paid.

14. Although plaintiff acted reasonably in rebidding the project after defendant CIS's breach, it would have been commercially more reasonable for plaintiff to have awarded the bid to the second low bidder under Bid No. 327 since it was reasonably foreseeable to plaintiff that that would have resulted in greater mitigation of plaintiff's damages.

Let Judgment be entered accordingly.