**HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, Plaintiff-Appellant,**

v.

**CONTINENTAL INFORMATION SYSTEMS CORP., Defendant-Appellee.**

**HUNTINGTON BEACH UNION HIGH SCHOOL DISTRICT, Plaintiff-Appellee,**

v.

**CONTINENTAL INFORMATION SYSTEMS CORP., Defendant-Appellant.**

Nos. 78–2643, 78–3018.

United States Court of Appeals, Ninth Circuit.

June 19, 1980.

Robert G. Dyer, San Diego, Cal., for Continental Information Systems Corp.

Robert S. Bower, Santa Ana, Cal., for plaintiff-appellant.

Before CHOY and ALARCON, Circuit Judges, and SOLOMON,* District Judge.

CHOY, Circuit Judge:

The district court found that Continental Information Systems Corp. (CIS) breached its contract to deliver a computer to the Huntington Beach Union High School District (School District), and awarded damages. 452 F.Supp. 538 (C.D.Cal.1978). We affirm in part and reverse in part.

## I. *Contract and Breach*

The School District, intending to purchase a computer, sent out a Notice Inviting Bids. CIS, a computer broker, responded with what the district court held was an offer to deliver a satisfactory computer by the end of July, and the School District formally accepted. CIS failed to acquire a satisfactory computer by July, and therefore failed to deliver. The School District had allowed the other bidders' offers to expire on July 12, so it had to rebid the contract. The winning bid in the second contest was almost $60,000 higher than CIS's contract price.

The district court's jurisdiction over the School District's suit was based on diversity of citizenship. The substantive law of California governs the contract and damages issues.

## A. *Adequacy of the Offer*

■ CIS argues that its response to the Notice Inviting Bids was too ambiguous and sketchy to constitute a valid offer, and that the School District's purported acceptance therefore created no contract.

The Notice Inviting Bids specified that the School District desired an IBM System 370/135 or 370/145, or any equivalent system compatible with the School District's existing software and peripherals. The major components of such systems are IBM central processing units 3135 and 3145, respectively.

While it should have, CIS's bid did not contain a copy of every page of the Notice Inviting Bids. Its bid consisted of four pages: an equal-opportunity certificate, the first page of the official bid form, a letter specifying CIS's bid, and a signature page.

The letter stated that

CIS Corp. is prepared to. . . .

1.  Deliver and install one of the required IBM configurations for the purchase price quoted below:

| 3135 HG | $206,758. | (S/N 62063) |
| or | | |
| 3145 HG2 | 332,939. | (S/N 10396) |

2.  The above serial numbers are s bject to prior sale.

.     .     .     .     .

6.  Delivery and installation can be accomplished within a July timeframe.

Thank you for the opportunity to submit our offer.

The official bid form page contained in CIS's bid included the following language:

Having carefully examined this Bid Form, and the Notice Inviting Bids, General Conditions and Addenda described herein, we herewith submit the following bid for Data Processing Equipment—Bid # 327.

.     .     .     .     .

The undersigned hereby proposes and agrees to furnish Data Processing Equipment as listed on the attached schedule. It is understood that the Board of Trustees reserves the right to accept this proposal either in whole or in part.

.     .     .     .     .

This proposal will remain valid for a period of 60 calendar days after the date specified for the receipt of bids.

CIS clearly was purporting to make a formal offer in response to the bid invitation, and was not making a mere "tentative proposal." Although it is true that CIS failed to return all the bid form documents, the School District had stated in the Notice

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

Inviting Bids (which CIS formally acknowledged reading) that it "reserves the right to reject any and all bids and to waive any irregularity therein." Here the School District waived the irregularity.

The language of the official bid form page included in CIS's bid gave the School District the option of accepting the proposal either in whole or in part. Thus the School District's formal acceptance at the May 24 school board meeting of one of the two options offered by CIS (the 3145 HG2) indicates no defect in either the offer or the acceptance. The formal acceptance was recorded in the minutes of the meeting, and CIS was promptly notified by telephone of the acceptance.

In sum, CIS's bid sufficiently stated the essential terms of the contract, and unquestionably constituted a valid offer.

B. *Other Arguments*

CIS attempts to avoid liability under the contract through several other arguments, all of which lack merit.

■ (1) CIS's offer contained the proviso "The above serial numbers are subject to prior sale." The School District interpreted that phrase to signify that if CIS sold the offered computer to someone else before the School District accepted the offer, CIS would supply a computer with a different serial number. CIS interpreted it as a term of art in the computer brokerage industry, to signify something akin to "subject to prior acquisition"—*i.e.*, CIS's acquisition of a satisfactory computer from a third party was a condition precedent to its liability under the contract. The district court's decision in favor of the School District's interpretation was not clearly erroneous. Moreover, the fact that the parties might have interpreted this phrase disparately does not, under the "objective" theory of contracts, prove that no contract was ever formed.

Even if the parties never agreed to the delivery of any particular serial-number computer, CIS would still be liable under the contract. The district court found that the "agreement reached between the par-

ties was for defendant CIS to supply any model 370/145 IBM computer to plaintiff, and was not to provide a particular serial number; the serial number was of interest to plaintiff only so that plaintiff could check the background of the particular computer to be supplied." 452 F.Supp. at 540. This finding was not clearly erroneous.

■ (2) The district court correctly found that the contract's unambiguous requirement that delivery be made by the end of July was a covenant, not a condition precedent.

■ (3) Since CIS made a written, signed offer, and the School District accepted in writing, CIS's argument that this contract falls within the Statute of Frauds is meritless. "All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." UCC § 2–201(1), Official Comment 1.

■ (4) Finally, CIS claims that the parties made a mutual mistake of fact in thinking that a computer was available to CIS, and that therefore the contract is void. This argument, too, lacks merit. Under California law, the seller's inability to acquire the contract item from a third party is no defense to an action for breach unless both parties contemplated that the item would be obtained from that particular source. *S.L. Jones & Co. v. Bond*, 191 Cal. 551, 555, 217 P. 725, 727 (1923); *Tomlinson v. Wander Seed & Bulb Co.*, 177 Cal.App.2d 462, 468–69, 2 Cal.Rptr. 310, 313–14 (1960). Here the School District was not apprised at the time of the contract that CIS was looking to obtain the contract computer from a particular source; rather, CIS gave some indication that it already possessed the computer.

■ Moreover, since the parties' misconception related to future circumstances rather than to any present or past condition or fact, the case could not possibly be one of "mutual mistake of fact." If it could, then all breached contracts would be voided due to the parties' "mutual mistake" in thinking

that the contract would be performed. CIS's argument is more properly one of impossibility, although that doctrine does not excuse CIS's breach either. Illustration 13 of Restatement of Contracts § 460 (1932) reads, "A contracts with B to sell him a cargo of tea of a certain kind and quality. At the time fixed for performance tea of that kind and quality is not obtainable on the market. A's duty is not discharged. Chances of the market due to ordinary events are assumed by him." Similarly, CIS's duty was not discharged, especially in light of the evidence that a satisfactory computer might have been "obtainable" had CIS been willing to make higher bids to third parties.

## II. *Damages*

### A. *General Damages*

■ The defeated bidders' offers to sell the School District a computer remained open, by their required terms, until July 12. On that date, the School District knew that CIS had not yet formally refused to perform and in fact was actively negotiating to obtain a computer from a third party. Rather than declare CIS in breach on July 12 and accept the second-best bidder's offer (thus running the risk of winding up with two computers or being held liable to CIS for breach), the School District chose to let the other offers lapse and to hope that CIS could obtain and deliver a satisfactory computer by July 31.

The district court found as facts that this was a "reasonable" course of action and that the School District acted "in good faith," and the court's conclusion of law was that the School District "acted reasonably." Nonetheless, since the court believed that it would have been "more reasonable" to accept the second-best offer on July 12, it limited the School District's general damages to $12,403.06, the difference between CIS's offer and the offer of the second-best bidder. 452 F.Supp. at 541–42.

This was clear error. A buyer can cover through "any reasonable purchase," Cal. Commercial Code § 2712(1), and failure to mitigate reduces recoverable damages only

when the course of action chosen is affirmatively unreasonable or in bad faith. "The test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective." UCC § 2–712, Official Comment 2.

As a California court has said,

The reasonableness of the efforts of the injured party must be judged in the light of the situation confronting him at the time the loss was threatened and not by the judgment of hindsight. [Citations.] The fact that reasonable measures other than the one taken would have avoided damage is not, in and of itself, proof of the fact that the one taken, though unsuccessful, was unreasonable. [Citation.] "If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen." [Citation.] The standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas of law. [Citations.] It is sufficient if he acts reasonably and with due diligence, in good faith. [Citations.]

*Green v. Smith*, 261 Cal.App.2d 392, 396–97, 67 Cal.Rptr. 796, 800 (1968).

Applying the facts as found by the district court to the applicable law, we hold that the School District was entitled as a matter of law to recover as general damages the difference between the contract price and its actual cover price: $59,424.66.

■ CIS's theory that the amount of damages was within the district court's equitable discretion because the court found a contract based on promissory estoppel is without merit. The district court also, correctly, found a contract based on consideration. The School District thus was entitled to its full legal damages under Cal. Commercial Code § 2712(2). When the winning party's remedy at law is adequate, courts should not use equitable remedies.

### B. Consequential Damages

█ The district court awarded the School District consequential damages of $9,782.10. This sum covered, among other things, three months' rental of peripheral equipment, which the School District had ordered for the new computer. As to the peripherals, which sat idle because of CIS's nonperformance, the district court might have based its award on the School District's "reliance" on CIS's representation. If so, the court erred, because the peripherals were ordered before CIS made its bid.

Nonetheless, the award of consequential damages was correct. Under Cal. Commercial Code § 2715(2)(a), "Consequential damages resulting from the seller's breach include . . . any loss resulting from general or particular requirements and needs of which ·the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." *See also* UCC § 2–715, Official Comment 3 (seller need not consciously accept liability). The Notice Inviting Bids stated that the School District had ordered the peripherals, thus giving CIS reason to know that fact. · No more is needed to establish the School District's right to consequential damages at law.

█ We will affirm a district court's decision if it is correct, regardless whether the district court relied upon a wrong ground or gave a wrong reason. *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937). Since CIS does not contest the amount of the alleged damages in regard to the peripherals, we affirm the district court's award of consequential damages.

### III. Conclusion

The district court's award of general damages is REVERSED and remanded with instruction to award the School District general damages of $59,424.66, plus prejudgment interest from July 20, 1977, until June 22, 1978, and postjudgment interest thereafter until paid. In all other respects, the judgment of the district court is AFFIRMED.