[Civ. No. 8689. Fourth Dist., Div. Two. Apr. 19, 1968.]

RICHARD GREEN, Plaintiff and Appellant, v. RICHARD B. SMITH et al., Defendants and Respondents.

Downs & Stewart and Walker W. Downs for Plaintiff and Appellant.

Kinkle, Rodiger, Graf, Dewberry & Spriggs and Robert B. Holland for Defendants and Respondents.

TAMURA, J.—Plaintiff, a wholesale grower of ornamental nursery trees brought this action for damages for crop loss allegedly sustained by him by reason of defendants' destruction of a concrete irrigation pipeline. The complaint was in two counts—one based on intentional trespass and one on negligence. Following a nonjury trial the court found that defendants unlawfully and intentionally, though not maliciously, demolished the pipeline and that as a consequence plaintiff was unable to harvest nursery stock having an "alleged market value in excess of $17,000." However, it found that plaintiff could have avoided the loss by utilizing a substitute means of conveying water to the land at a cost of not more than $600 and, hence, limited plaintiff's recovery to a judgment for that sum against certain of the named defendants. Plaintiff appeals.[1]

---

[1]Plaintiff appeals "from that portion of the judgment . . . wherein judgment was rendered for the plaintiff and against the defendants,

Plaintiff contends that the court "abused its discretion" in applying the doctrine of mitigation of damages. To state it more accurately his contention appears to be that on the findings made, the court erred in concluding that plaintiff failed to mitigate damages.

Plaintiff was the owner of a leasehold interest in a parcel of land on which he planted and grew, among other items, 110 rows of ornamental nursery trees, each row containing approximately 425 trees. A cement pipeline which he used to irrigate the trees and to water the ground preparatory to harvesting them ran along the northerly edge of the premises. Plaintiff's lease was due to expire on December 31, 1962.

On December 13, 1962, defendant Richard B. Smith, Inc. (Smith, Inc.), acquired title to the land, subject to the lease, and contracted with Kirchnavy Brothers, a partnership composed of defendants James R. Kirchnavy and William Kirchnavy, to clear the land for subdivision development. Some time in December 1962, pursuant to instructions from Smith, Inc., but without plaintiff's permission or consent, Kirchnavy Brothers demolished the pipeline.

In December, prior to the destruction of the pipeline, plaintiff had commenced harvesting the trees. The procedure required the trees to be cut by running a U-shaped blade, mounted on a tractor, through the ground at a depth of 18-24 inches. On December 26 plaintiff discovered that he was unable to continue harvesting because the soil had become too dry and hard to operate the cutter..He immediately attempted to irrigate the land by constructing a ditch along the site of the demolished pipeline, but because of a swale the berms failed to contain the water. After waiting for a few days to permit the soil to dry, he constructed a .larger ditch with higher and thicker berms and was thereby able to convey water to approximately 19 rows which he subsequently harvested. However, because of the swale he was unable to convey water to approximately 25 rows. On January 8 or 9 he left the premises stating that he was unable to harvest the remaining 25 rows. As soon as plaintiff left the premises, defendants plowed under the remaining trees.

Defendants introduced evidence to show that plaintiff could have conveyed water to the remaining 25 rows at a cost not exceeding $600 either (1) by constructing a ditch with higher

Richard B. Smith, Inc., James R. Kirchnavy, Kirchnavy Brothers, and William Kirchnavy, and each of them, jointly and severally, in the amount of $600.00, entered herein on November 28 [sic], 1966."

.or thicker berms; (2) by renting portable irrigation equipment and connecting it to a standpipe located at the edge of the property; (3) by obtaining water from a city fire hydrant located near the property; (4) by obtaining water from a domestic water meter; (5) by requesting use of defendants water tank trucks which were on the land for subdivision work. Plaintiff admitted that he had the financial ability to incur an expenditure of $600 for substitute service.

On the issue of mitigation the court found:

"Plaintiff's nursery stock was ready for market in December of 1962 and prior to the demolition of said pipeline plaintiff had commenced the harvesting of his nursery stock; from and after the date of demolition of said pipeline plaintiff was unable to irrigate his nursery stock preparatory to harvesting as he had done theretofore. That as soon as plaintiff discovered that the land was dry and his nursery stock could not be harvested without irrigating, he immediately thereafter with the use of his equipment and employees endeavored to irrigate said nursery stock through an open ditch or trench which he constructed along the site of the demolished pipeline; when this operation was unsuccessful as the open ditch or berm broke, plaintiff again endeavored to irrigate said nursery trees by constructing another ditch or trench higher and thicker than the previous one and upon turning the water thereon was able to irrigate 19 rows of nursery trees and subsequently harvested them, but because of a swale in the land the open ditch could not carry the water to the remaining 25 rows of nursery trees and the berm again collapsed—resulting in approximately 9300 trees having an alleged fair market value in excess of $17,000.00 from being harvested.

"That instead of using the open ditch or trench, plaintiff could have effected the delivery of the water to said remaining 25 rows of trees by other means at his disposal, to wit, from water available at a standpipe at the edge of said Minnick property by means of portable irrigation equipment or by installing a temporary line of water available from the City of Chino. Therefore, plaintiff's actual and real loss for which he is entitled to compensation was the cost of effecting the delivery of such water from other sources and the cost of said delivery would not have exceeded the sum of $600.00."

From the findings the court concluded that defendants intentionally, though not maliciously, destroyed the pipeline and that as a result plaintiff sustained damages but that he "failed to mitigate his damages as he was required to do."

█ It has been the policy of the courts to promote the mitigation of damages. (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.*, 63 Cal.2d 602, 605 [47 Cal.Rptr. 564, 407 P.2d 868]; *Jordan* v. *Talbot*, 55 Cal.2d 597, 610 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161]; *Mabb* v. *Stewart*, 147 Cal. 413, 417 [81 P. 103].) The doctrine applies in tort, wilful as well as negligent. (See *Kleinclaus* v. *Marin Realty Co.*, 94 Cal.App.2d 733, 739 [211 P.2d 582]; Rest., Torts, § 919, com. a.) █ A plaintiff cannot be compensated for damages which he could have avoided by reasonable effort or expenditures. (*Guerrieri* v. *Severini*, 51 Cal.2d 12, 23 [330 P.2d 635]; *Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840, 844 [147 P.2d 558]; *Schultz* v. *Town of Lakeport*, 5 Cal.2d 377, 382, 383 [54 P.2d 1110, 55 P.2d 485, 108 A.L.R. 1168]; *Murphy* v. *Kelly*, 137 Cal.App.2d 21, 31 [289 P.2d 565].) The frequent statement of the principle in the terms of a "duty" imposed on the injured party has been criticized on the theory that a breach of the "duty" does not give rise to a correlative right of action. (*Ellerman Lines, Ltd.* v. *The President Harding* (2d Cir. 1961) 288 F.2d 288, 289-290; 5 Corbin, Contracts, § 1039, p. 242; 20 Am.Jur.2d 50.) It is perhaps more accurate to say that the wrongdoer is not required to compensate the injured party for damages which are avoidable by reasonable effort on the latter's part. (*Ellerman Lines, Ltd.* v. *The President Harding, supra,* at p. 290; 5 Corbin, Contracts, pp. 242-243; Rest., Torts, § 918; McCormick (1935) Damages, p. 127; see *Murphy* v. *Kelly, supra,* 137 Cal.App.2d 21, 31.) As Judge Friendly observed in *Ellerman Lines, Ltd.* v. *The President Harding, supra,* at p. 290, the current phraseology of the principle may lead to sounder results than its statement in terms of a "duty."

The doctrine does not require the injured party to take measures which are unreasonable or impractical or which would involve expenditures disproportionate to the loss sought to be avoided or which may be beyond his financial means. (*Jordan* v. *Talbot, supra,* 55 Cal.2d 597, 611; *Valencia* v. *Shell Oil Co., supra,* 23 Cal.2d 840, 846; *Schultz* v. *Town of Lakeport, supra,* 5 Cal.2d 377, 384; *Joerger* v. *Pacific Gas & Elec. Co.*, 207 Cal. 8, 28 [276 P. 1017]; 2 Witkin, Summary of Cal. Law (1960), p. 1608.) █ The reasonableness of the efforts of the injured party must be judged in the light of the situation confronting him at the time the loss was threatened and not by the judgment of hindsight. (*Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578, 602-603 [271 P.2d

122]; McCormick, Damages, pp. 133-134; Sedgwick, Damages, § 221, p. 415.) The fact that reasonable measures other than the one taken would have avoided damage is not, in and of itself, proof of the fact that the one taken, though unsuccessful, was unreasonable. (*Basin Oil Co. v. Baash-Ross Tool Co., supra,* at p. 602-603.) "If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen." (McCormick, Damages, p. 134.) ■ The standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas of law. (See *Ellerman Lines, Ltd. v. The President Harding, supra,* 288 F.2d 288; McCormick, Damages, p. 134.) It is sufficient if he acts reasonably and with due diligence, in good faith. (*Basin Oil Co. v. Baasch-Ross Tool Co., supra,* 125 Cal.App.2d 578, 602; *Marshall v. Ransome Concrete Co.,* 33 Cal.App. 782, 786 [166 P. 846].)

■ Plaintiff contends that the court erred in determining that under the facts of the instant case plaintiff failed to act reasonably to mitigate damages. Defendants, on the other hand, urge that the issue was one of fact and that the trial court's determination may not be disturbed on appeal if there is any substantial evidence to support it.

It has been held that the question whether an injured party acted reasonably to mitigate damages is a matter to be determined by the trier of fact and that the scope of review on appeal is circumscribed by the "any substantial evidence" rule.[2] (*Sackett v. Spindler,* 248 Cal.App.2d 220, 239 [56 Cal. Rptr. 435]; *Gainer v. Storck,* 169 Cal.App.2d 681, 691 [338 P.2d 195]; *Basin Oil Co. v. Baash-Ross Tool Co., supra,* 125 Cal.App.2d 578, 601; *Jegen v. Berger,* 77 Cal.App.2d 1, 11 [174 P.2d 489].) However, in the instant case the court made specific probative findings concerning the efforts made by plaintiff to save his crop as well as the feasibility and cost of providing an alternate means of irrigating the land and from those findings concluded that plaintiff failed to mitigate damages as required by law. ■ Where a conclusion, whether it be characterized as a finding of "ultimate fact" or a legal conclusion, is drawn from specific probative findings, it

---

[2] In contrast to the limited reviewability of such determinations in this state, the Court of Appeals of the 2d Circuit has long followed the view that where the evidence is uncontradicted such determinations are freely reviewable on appeal. (*Ellerman Lines, Ltd. v. The President Harding, supra,* 288 F.2d 288; Wiener, *The Civil Non-Jury Trial and the Law-Fact Distinction,* 55 Cal.L.Rev. 1020, 1043.)

cannot stand if it is not supported or is inconsistent with the specific probative findings. (*Garrison* v. *Edward Brown & Sons,* 25 Cal.2d 473, 478 [154 P.2d 377]; *Hammond Lbr. Co.* v. *Barth Inv. Corp.,* 202 Cal. 606, 609 [262 P. 31]; *Miller* v. *Smith,* 179 Cal.App.2d 114, 116-118 [3 Cal.Rptr. 492]; *Estate of Hansen,* 91 Cal.App.2d 610, 614 [205 P.2d 686]; *Hunter* v. *Sparling,* 87 Cal.App.2d 711, 721 [198 P.2d 807]; 2 Witkin, Cal. Procedure (1954) pp. 1852-1853.) ▇▇ The question whether probative facts support the conclusion drawn from them does not involve weighing or resolving conflicts in the evidence or judging the credibility of witnesses. It is a question of law reviewable on appeal. (Cf. *Autry* v. *Republic Productions, Inc.,* 30 Cal.2d 144, 156-157 [180 P.2d 888].)

▇▇ In the instant case the probative findings do not support the conclusion that plaintiff failed to make a reasonable effort to avoid the consequences of defendants' tortious act. According to the specific findings, when plaintiff discovered that he could not continue harvesting without moistening the soil, he immediately endeavored to irrigate the land by constructing a ditch along the site of the demolished pipeline and, when the first attempt failed, he reconstructed the ditch with thicker and higher berms and was thereby able to irrigate and salvage 19 rows. Those findings are wholly inconsistent with the necessarily implied conclusion that plaintiff failed to take reasonable measures to avoid injury; they establish the fact that he made a reasonable good faith effort to save his crop. The court's conclusion cannot stand on the finding that instead of using the open ditch, plaintiff, at a cost of not more than $600, could have conveyed water to the land by renting portable irrigation equipment and connecting it to a standpipe located at the edge of the property or by connecting a temporary line to a city fire hydrant. The fact that in retrospect a reasonable alternative course of action is shown to have been feasible is not proof of the fact that the course actually pursued by plaintiff was unreasonable. Significantly, defendants sought to prove that one of the alternatives which was available to plaintiff was the construction of an open ditch, albeit, they sought to prove that plaintiff should have constructed one with higher and thicker berms.

Plaintiff's response to the threatened damage was in sharp contrast to the conduct of the injured party in *Henrici* v. *South Feather Land etc. Co.,* 177 Cal. 442 [170 P. 1135]; *Mabb* v. *Stewart, supra,* 147 Cal. 413; *Severini* v. *Sutter-Butte Canal Co.,* 59 Cal.App. 154 [210 P. 49]. In those cases, plain-

tiffs, through passive indifference or stubborn insistence upon a conceived legal right, failed to take any reasonable steps to avoid damage.

·We conclude that for the foregoing reasons that portion of the judgment from which the appeal has been taken must be reversed. Since damages were not specifically ascertained and additional evidence may be necessary on that issue, it is our opinion that the interests of justice would best be served by an unqualified reversal rather than a reversal with directions.

Judgment reversed.[3]

McCabe, P. J., and Kerrigan, J., concurred.

The petition of respondent Smith, Inc., for a hearing by the Supreme Court was denied July 3, 1968.

---

[3]This being a partial appeal, reversal will have no effect on the remaining portions of the judgment. (*American Enterprises, Inc.* v. *Van Winkle*, 39 Cal.2d 210, 216-217 [246 P.2d 935]; *Culbertson* v. *Cizek*, 225 Cal.App.2d 451, 471 [37 Cal.Rptr. 548]; *Burgermeister Brewing Corp.* v. *Superior Court*, 195 Cal.App.2d 368, 371-372 [15 Cal.Rptr. 751].)