In re STEWART'S PROPERTIES, INC., dba Stewart's Niu Valley Restaurant, Debtor.

Bankruptcy No. 82–00615.

United States Bankruptcy Court, D. Hawaii.

Aug. 6, 1984.

Gerald I. Fujita, Honolulu, Hawaii, for trustee.

James T. Leavitt, Jr., Honolulu, Hawaii, for lessors.

Helen B. Ryan, Honolulu, Hawaii, for Stewart.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER RE LAND-LORD'S GENERAL UNSECURED CLAIMS

JON J. CHINEN, Bankruptcy Judge.

This matter arises out of a general unsecured claim for $34,607.86, filed by Messrs. Edward Brennan and Roger Linders, dba Niu Shopping Center, hereinafter "Lessors", for rent and related charges pursuant to a written lease, damages for termination of said lease, and costs for repairs and clean-up to the leasehold premises. Debtor's principal, Robert A. Stewart, hereafter "Stewart", filed objections to the claim, asserting that the damages sought by Lessors are unproven and excessive and that Lessors are responsible for the damages they now seek. The Trustee for Debtor originally objected to that part of the claim for rent and related charges but

subsequently withdrew his objection. Conceding that the landlord is entitled to damages for termination of the lease, the Trustee requests that the Bankruptcy Court determine the proper formula for such damages under 502(b)(7) of the Bankruptcy Code.

The Trustee, represented by Gerald I. Fujita, Esq., the Lessors represented by James T. Leavitt, Jr., and Robert A. Stewart, represented by Helen B. Ryan, Esq., have submitted the matter for decision on their memoranda.

Based on the memoranda on file and the affidavits attached thereto, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Stewart Properties, Inc., dba Stewarts' Niu Valley Restaurant, hereinafter "Debtor", filed a voluntary petition for relief under Chapter 7 on October 26, 1982.

2. On October 27, 1982, the court appointed Mr. Ralph S. Aoki, Trustee for Debtor.

3. Lessors filed their proof of claim no. 13 on February 22, 1983, amending their original claim no. 3 for general unsecured claim. Lessors separate their claim into three parts. The first part consists of prepetition rent and related charges for $5,254.70 plus $2,946.07 for extraordinary common area maintenance charges, for a total amount of $8,200.77. The second part is for damages for termination of the lease by the Trustee under section 502(b)(7) of the Bankruptcy Code. The lease agreement between the Debtor and Lessors was to have ended on February 28, 1985. The premises were abandoned by the Trustee and repossessed by the Lessors on February 5, 1983. Damages are claimed for the amount of rent reserved by the lease for one year from October 26, 1982 to October 26, 1983, in the amount of $32,826.08, less $8,744.99 as allowed administrative rent from October 27, 1982 through February 5, 1983. The total amount claimed under the second part is for $24,081.49. The third part of the claim is for $2,326.00, as being

the balance owing under a compromise agreement between the Lessors and the Trustee for repairs to the premises after the Trustee vacated the premises. The original claim for repairs was for $6,356.00; however as a result of the above compromise settlement, only $4,030.00 was sought by Lessors during the hearing for administrative rent, and the remaining $2,326.00 was reserved as part of their general unsecured claim.

4. The Trustee concedes that Lessors are entitled to damages for termination of the lease under 11 U.S.C. 502(b)(7), but is uncertain as to the formula to be applied and thus seeks a ruling from the Bankruptcy Court as to the amount of damages the Lessors are entitled to recover.

5. Stewart, the principal and a creditor of Debtor, contends that the damages for termination of the lease are unsubstantiated and excessive and that, under the formula prescribed within § 502(b)(7), Lessors' damages, if any, are limited to the amount set forth in the above Code section. Furthermore Stewart argues that Lessors are responsible for the damages they now claim and should not be awarded any sum. Specifically he asserts that:

(i) Lessors refused to allow the restaurant to sublet when it was a going business.

(ii) Lessors oversaturated the shopping center with restaurants.

(iii) Lessors failed to make reasonable efforts to relet the premises.

(iv) Lessors actively discouraged interest in the property by requiring brokers to reveal the names of principals and by failing to post "FOR RENT" signs.

(v) Lessors made re-rental impossible by quoting a minimum rental figure twice the amount in the lease. The minimum amount exceeded what the market would bear.

With respect to that portion of the claim seeking costs for repairs and clean-up, Stewart insists that this demand should have been brought as an administrative

expense and not as a general unsecured claim. In addition, Stewart contends that the cost of repairs to convert the premises from a restaurant to a general retail store should not be allowed because the improvements and remodeling ultimately benefitted the Lessors.

## CONCLUSIONS OF LAW

1. No specific objection is made by either the Trustee or by Stewart to that part of the Lessors' claim for pre-petition rent and related charges and for extraordinary common area maintenance charges. This is an allowable claim within the parameters of 11 U.S.C. Section 502(b)(7). *Matter of Zienel Furniture, Inc.,* 13 B.R. 264, 267 (Bkrtcy.E.D.Wis.1981).

2. 11 U.S.C. § 502(b)(7) sets forth a formula for calculating damages when a lessor files a claim for termination of a lease. The section provides:

(b) Except as provided in subsections (f), (g), (h) and (8) of this section, *if such objection to a claim is made, the court,* after notice and a hearing, *shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount,* except to the extent that—

. . . .

(7) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, *such claim exceeds—*

(A) *the rent reserved by such lease,* without acceleration, *for the greater of one year, or 15 percent,* not to exceed three years, *of the remaining term of such lease, following the earlier of—*
(i) *the date of the filing of the petition;* and
(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates; (emphasis added)

The legislative history behind this provision discloses that the provision was designed to allow a landlord to claim damages for early termination of a lease while at the same time limiting the claim to permit other general unsecured creditors a chance at recovering a dividend from the estate.

The damages a landlord may assert from termination of a lease are limited to the rent reserved for the greater of one year or 10% (enacted at 15%) of the remaining lease term, not to exceed three years after the earlier of the date of the filing of the petition and the date of surrender or repossession. The sliding scale formula is new, is designed to protect the long-term lessor, and is included as a replacement of the dual provisions in current law of a three-year test for reorganization cases and a one-year test for liquidation cases.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 353 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6309; Collier on Bankruptcy, 15th ed., Vol. 3, Sec. 502.02(b); *Oldden v. Tonto Realty Co.,* 143 F.2d 916 (2d Cir. 1944); *In re Good Hope Industries, Inc.,* 16 B.R. 702 (Bkrtcy.D.Mass.1982).

3. The amount sought by Lessors is the maximum amount allowable under 502(b)(7), i.e. rent for one year from the date of filing of the petition, minus administrative rent previously paid. Their claim for damages would be much larger but for this limitation imposed by the above code section.

4. Mr. Stewart argues that Lessors have not substantiated or proven that they suffered any damages as a result of the Trustee's termination of the lease. To date, more than a year after the petition has been filed, the premises remain vacant. Rent for one year, at $2,735.51 a month, is $32,826.08. This figure is reduced by $8,744.99, the amount allowed as administrative rent by the Trustee from October 27, 1982 to February 4, 1983. Lessors are thus entitled to damages in the amount of $24,081.09 for rejection of the lease by the Trustee.

5. Lessors assert that $6,356.00 was paid to Eagle Construction Co. for repairs and clean-up to the premises formerly occu-

pied by Debtor. This claim was originally pursued in the hearing for administrative rent. However, as a result of the compromise agreement approved by the Court, Lessors now assert the balance of their claim for $2,326.00 as an unsecured claim.

Under *In re International Coins & Currency,* 18 B.R. 335, 6 C.B.C.2d 309 (Bkrtcy D.Vt.1982), damages for breach of covenant to deliver premises in as good condition as at the beginning of the term must come as an administrative expense and not as a claim under § 502(b)(7). However, since the compromise agreement between the Trustee and the Lessors had been approved by the Court, this claim is properly before the court as a general unsecured claim.

■ This amount however is denied. While Lessors are entitled to recover against Debtor expenses which were reasonably and necessarily incurred in order to obtain a new tenant, they may not recover expenses for long-term capital improvements where such expeditures ultimately benefitted themselves as lessors. *Matter of Parkview Gem, Inc.,* 465 F.Supp. 629 (W.D.Mo.1979); *C.D. Stimson Co. v. Porter,* 195 F.2d 410 (10th Cir.1952).

In *Matter of Parkview Gem, Inc., supra,* a landlord sought recovery of remodeling expenses allegedly incurred in order to obtain new tenants. The landlord argued that these expenses were reasonable and necessary to mitigate damages. In response to these claims for expenses, the Trustee countered that the repairs and remodeling work enhanced the value of the premises by changing the facilities into more marketable multipurpose facilities. The court held that the landlord was entitled to recover reasonable expenses incurred in mitigating damages, but was not entitled to recover those expenses which resulted in long-term capital improvements since those expenditures ultimately benefited the landlord.

In *C.D. Stimson Co. v. Porter, supra,* a landlord offered proof showing he was required to spend approximately $5,600.00 in repairs and remodeling costs before the space could be re-rented to a new tenant. The sum expended included the cost of dividing the premises into two rental units, putting in two rest rooms and other major alterations. The Court found that the lessee should undoubtedly pay the expenses reasonably necessary to obtain a new tenant and mitigate damages, "But changes like these, of such substantial and permanent character, rebounding as they do to the benefit of the lessor, are not proper items of damages." *C.D. Stimson Co. v. Porter, supra,* at 414.

■ The uncontroverted affidavit of Mr. Stewart shows that Lessors seek damages for two walls running from the front to the back of the premises, the floor covering, the ceiling, the removal of the light fixtures and the removal of unwanted or leaky plumbing. None of the damages claimed by Lessors are for damages to the structural parts of the building. The two walls, the floor covering, the dropped ceiling, the electrical wiring and light fixtures, and all plumbing and plumbing fixtures were supplied and paid for by Debtor. Lessors' real cost for repairs comes from converting the premises from a restaurant to general retail store space.

While Lessors are entitled to recover those expenses which were reasonably necessary to relet the premises, they may not recover the costs for repairs which resulted in substantial improvement and enhancement in value to the premises. *Matter of Parkview Gem, Inc., supra; C.D. Stimson Co. v. Porter, supra.* Lessors' claim for $2,326.00 is therefore disallowed.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Lessors are allowed an unsecured claim of $8,200.77 for pre-petition rent and common area charges.

2. Lessors are allowed an unsecured claim of $24,081.09 as damages for rejection of the lease by the Trustee.

3. The claim for $2,326.00 for repairs to the premises is disallowed.