[No. H003684. Sixth Dist. Nov. 21, 1989.]

ZANKER DEVELOPMENT CO., Plaintiff and Respondent, v. COGITO SYSTEMS CORPORATION, et al., Defendants and Appellants.

COUNSEL

Elliot L. Bien, Jose H. Garcia, Stephen C. Tausz and Bronson, Bronson & McKinnon for Defendants and Appellants.

Cary W. Spencer, Brian F. Buchanan and Morris & Spencer for Plaintiff and Respondent.

OPINION

COTTLE, J.—This appeal is taken from a judgment entered in favor of plaintiff and respondent Zanker Development Co. (Zanker) and against defendants and appellants (Cogito), Ching Fong Investment U.S.A. Corp. (Ching Fong) and Su Shiong Huang (Huang). The judgment was against Cogito for breach of a written lease agreement and against Ching Fong and Huang for breach of their written guarantees of the lease. The action was

filed after Zanker had obtained an unlawful detainer judgment against Cogito, and Cogito had vacated the building it had leased from Zanker.

Prior to anticipated jury selection, the trial court granted Zanker's motion in limine to exclude evidence of offers by Cogito to relet plaintiff's premises "on other terms and conditions" made after Zanker had obtained the unlawful detainer judgment against Cogito. That ruling was the subject of a petition for writ of mandate and stay request filed by Cogito; the petition and stay were denied by this court on June 3, 1987 (H003157). Thereafter, the parties agreed to submit the action to the court for decision based upon 57 documentary exhibits as well as written and oral stipulations of fact agreed upon by all parties. The court filed a statement of decision, summarizing its factual and legal conclusions and entered a judgment for Zanker in the amount of $3,637,310.02. On appeal, Cogito renews its claim that the trial court erred in granting Zanker's motion in limine to exclude evidence of Cogito's proposals to stay on all or a portion of the leased premises under different terms and conditions than those set forth in the lease terminated by the unlawful detainer judgment.

FACTS

On April 26, 1983, Zanker and Cogito entered into a written lease agreement pursuant to which Cogito took possession of a 53,000 square foot commercial building owned by Zanker. At its sole cost, Zanker constructed over $1 million of improvements requested by and specially designed for Cogito for the leased property at 2355 Zanker Road in San Jose. Cogito's performance under the lease and its four written modifications was guaranteed, in writing, by defendants Huang and Fong. The lease was for a seven-year term continuing until August 11, 1990; the monthly base rent was $54,060. However, because of a rent credit of $486,540 given by Zanker to Cogito, Cogito did not pay any base rent during the first nine months after commencement of the lease.

Although the lease required Cogito to pay its base rent on the first day of each month, Cogito never made a payment of its base rent on time. Cogito's failure to pay rent in May and June of 1985 resulted in the depletion of most of Zanker's cash reserve and required Zanker to request its partners to make additional capital contributions to meet the partnership's expenses of close to $50,000 a month. Zanker was forced to borrow money to enable it to meet its expenses and paid interest in the amount of $75,787.64 on these borrowed funds.

In the spring of 1985, Zanker received offers for purchase of the property then leased to Cogito, but could not consummate a sale since each offer was

conditioned in part upon Cogito not being in default on the lease or upon verification of the satisfactory financial condition of Cogito.

On July 18, 1985, an unlawful detainer judgment was entered in Santa Clara County Superior Court (case No. 577613) in favor of Zanker and against Cogito, terminating the Cogito lease, ordering restitution, and evicting Cogito from possession of the real property located at 2355 Zanker Road. The premises were vacated on September 30, 1985.

After Cogito vacated the property, Zanker incurred restoration and cleaning costs of $44,817.02. Local real estate brokers, notified the premises were available for lease, were enlisted to help lease the premises; the property was made available for their inspection and they were guaranteed "full commission" for any "competitive market deals" in which they were involved. Cornish & Carey Commercial was granted an "Exclusive Right to Lease" and agreed to use all appropriate marketing procedures to lease the premises, including cooperating with competing brokerage companies. Zanker agreed to pay the full commission to any broker who procured a tenant and in addition pay 50 percent of that commission to Cornish & Carey Commercial.

During the period of time the Zanker property was vacant, the premises were shown to potential tenants and more than one written lease proposal was submitted. On December 11, 1986, a written lease proposal was submitted by Zanker to IXYS Corporation (IXYS). On January 23, 1987, Zanker and IXYS entered into a written lease for the premises; five days later, they entered into a written reimbursement agreement which required Zanker to reimburse IXYS for costs incurred as a result of its move to the Zanker property.

The IXYS lease required Zanker to give IXYS a tenant improvement allowance of $159,000 and to construct certain improvements at an expense to Zanker of $36,310. Zanker incurred an expense of $105,321.60 for brokers' commissions earned upon execution of the IXYS lease.

Cogito had the opportunity to offer evidence that Zanker's efforts to lease the property to a new tenant (other than Cogito) were unreasonable. It did not do so. Instead, Cogito offered to introduce evidence of its offers "to relet plaintiff's premises under new terms . . . on the issue of plaintiff's reasonableness in mitigation of its damages." These offers were made after the entry on July 18, 1985, of the unlawful detainer judgment restoring possession of the premises to Zanker.

## DISCUSSION

Civil Code section 1951.2 governs the amount which a lessor may receive in damages from a lessee who breaches a real property lease. Subdivision (a)(2) of that section provides that a lessor may recover the present value of all past due rent as of the date of judgment and all future rent accruing after judgment for the remainder of the lease term, although a lessor's recovery may be reduced by "the amount of such rental loss that lessee proves could have been reasonably avoided." The legislative committee comment to the section (10 West's Ann. Civ. Code (1985 ed.) p. 355; Deering's Ann. Civ. Code (1981 ed.) p. 516) points out that, in determining what constitutes a rental loss that could be reasonably avoided, "[t]he general principles that govern mitigation of damages . . . were summarized in *Green* v. *Smith* [(1968) 261 Cal.App.2d 392 (67 Cal.Rptr. 796)]."

In *Green* the plaintiff grower of ornamental nursery trees sought damages for crop loss sustained by reason of defendant's destruction of a concrete irrigation ditch. The trial court found that plaintiff suffered damages in excess of $17,000. Although plaintiff had taken steps to mitigate his damage, the trial court found he could have avoided all crop loss, at a cost of not more than $600, by pursuing any one of five alternatives suggested by defendant. Based on this finding, the court found plaintiff failed to mitigate his damage; judgment was entered for plaintiff for $600. The Court of Appeal reversed the judgment on the ground that, as a matter of law, plaintiff had met his duty of acting reasonably to mitigate damage, and it was irrelevant that in hindsight he could have taken alternative measures to further reduce his damages. (261 Cal.App.2d 393.)

If the evidence offered by Cogito had been admitted and had formed the basis of a jury verdict limiting Zanker's recovery, the judgment would be subject to reversal under authority of *Green*. ■ The court in *Green* focused not on the failure of plaintiff to pursue the five alternative courses of action suggested by defendant but upon the reasonableness of the action which plaintiff did in fact take: "The fact that in retrospect a reasonable alternative course of action is shown to have been feasible is not proof of the fact that the course actually pursued by plaintiff was unreasonable." (*Id.,* at p. 398.)

The court in *Green* distinguished the cases of *Henrici* v. *South Feather Land etc. Co.* (1918) 177 Cal. 442 [170 P. 1135], and *Severini* v. *Sutter-Butte Canal Co.* (1922) 59 Cal.App. 154 [210 P. 49], upon which Cogito heavily relies in support of its position that its offers to relet the premises on new terms were relevant on the issue of mitigation of damages. The *Green* court noted that in *Henrici* and *Severini,* "plaintiffs, through passive indifference

or stubborn insistence upon a conceived legal right, failed to take any reasonable steps to avoid damage" and that these facts were in "sharp contrast" to the actions of the injured party in *Green. (Green v. Smith, supra,* 261 Cal.App.2d at pp. 398-399.) The facts in *Henrici* and *Severini* are also in sharp contrast to those before us. ■ Here Zanker made good faith and reasonable efforts to mitigate its damage at substantial expense to itself, and did successfully obtain a new tenant for the property. Zanker was presented by Cogito with only one other alternative, namely, to allow a tenant, previously evicted for nonpayment of rent, to remain in possession of its property on terms other than those in the lease terminated by the unlawful detainer judgment. Assuming we were to deem this alternative "reasonable," which we do not, this alternative suggested by Cogito is not "proof of the fact that the course actually pursued by plaintiff was unreasonable." (*Id.,* at p. 398.) To the contrary, the documentary exhibits and stipulations before the trial court provide overwhelming evidence that plaintiff Zanker acted reasonably in mitigating its damages.

Rather than considering Cogito's offers to relet the property under new terms as "reasonable" proposals to mitigate damages, we hold that it is not necessary for a plaintiff landlord to renegotiate another lease[1] with a defendant tenant who has repudiated its original lease and whose lease was terminated by an unlawful detainer judgment even though the tenant offers terms that conceivably could result in avoiding loss; "[w]e doubt if any man should be required to contract a second time with one who has without cause breached a prior contract with him. . . ." (*Stanley Manly Boys' Clothes v. Hickey* (1924) 113 Tex. 482 [259 S.W. 160, 162]; see, e.g. *United States v. Sabin Metal Corporation* (S.D.N.Y. 1957) 151 F.Supp. 683, affd. *United States v. Sabin Metal Corp.* (2d Cir. 1958) 253 F.2d 956.)

Because Zanker had no obligation to consider allowing previously evicted Cogito to remain on the premises under new terms and conditions, evidence of Cogito's offers to relet the property under new terms were properly excluded on the issue of mitigation. The admissible evidence conclusively established that Zanker made good faith and reasonable efforts to mitigate its damages, at substantial expense to itself, and successfully obtained a new

---

[1] In its supplemental offer of proof Cogito set forth that witnesses for the defense would have testified that "among the offers Cogito made to Zanker following the judgment in the unlawful detainer proceeding was the proposal that Cogito be allowed to stay on the premises in question paying the full monthly rent due under the lease with Zanker having the right to require Cogito to vacate the premises upon thirty (30) days notice. Other offers included Cogito remaining on half the premises at half rent with Zanker having the right to relet the other half of the premises." We note that none of the offers set forth above is the equivalent of the original seven-year lease entered into by the parties; each was an offer by the evicted tenant to renegotiate another lease with the landlord "on other terms and conditions" than those set forth in that original lease.

tenant for the premises. On the other hand, Cogito failed to offer any evidence to show that Zanker's efforts to lease the property to a new tenant were unreasonable.

The judgment is affirmed.

Agliano, P. J., and Fogel, J.,* concurred.

A petition for a rehearing was denied December 12, 1989.

---

* Assigned by the Chairperson of the Judicial Council.