**In re FIRST ALLIANCE CORPORATION, Debtor.**

**Bankruptcy No. 88–08357–LM11.**

United States Bankruptcy Court,
S.D. California.

April 25, 1991.

Dennis J. Wickham, Seltzer Caplan Wilkins & McMahon, San Diego, Cal., for Rancho Bernardo Ltd. Partnership.

Robert D. Middendorf, Sullivan, Delafield, McDonald, Allen & Middendorf, San Diego, Cal., for debtor.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN,
Bankruptcy Judge.

This matter comes before the court on debtor First Alliance Corporation's ("FAC") objection to Rancho Bernardo Limited Partnership's ("RBLP") claim of damages for termination of a lease. At issue is whether "free rent" provided to FAC under a lease modification letter must be taken into account when calculating the maximum allowable damages pursuant to 11 U.S.C. § 502(b)(6). This appears to be an issue of first impression.

### FACTS

FAC and RBLP entered into a lease agreement on March 31, 1988. Under the agreement, RBLP leased FAC approximately 13,102 square feet of office space. The lease provided for an initial term of five years, with an annual base rent of $259,419.60, payable at $21,618.30 per month. By a letter agreement dated March 31, 1988, which modified the lease, RBLP granted FAC the equivalent of $126,070.25 in free rent. The credit was to be realized over the first 12 months of the lease with a monthly credit of $10,809.15 in the first 11 months and a credit of $7,169.60 in the 12th month. FAC paid RBLP a security deposit in the sum of $21,618.

Under the lease, FAC paid $10,809.15 ($21,618.30 less $10,809.15 discount), to RBLP for the first five months through the date FAC filed its bankruptcy petition on October 28, 1988. At that point, FAC still had seven months' worth of "free rent" available to it.

FAC did not assume the lease within 60 days as provided by 11 U.S.C. § 365(d)(4), and as a result, the lease was deemed rejected. However, FAC did pay rent of $10,809.15 a month for the months of November and December 1988.

In January 1989, RBLP agreed to permit FAC to remain in possession of the premises upon the payment of monthly rent in the sum of $21,618.30. FAC made payments of $21,618.30 for rent in the months of January and February 1989. Thereafter, FAC ceased payments and surrendered possession of the property. In total, FAC expended $64,854.90 in post-petition rent.

RBLP is now seeking damages for termination of the lease under 11 U.S.C. § 502(b)(6). That section states:

(b) Except as [otherwise] provided ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease without acceleration, on the earlier of such dates;

The parties agree that RBLP is entitled to damages up to a maximum of one years' rent reserved under the lease from the date of FAC's bankruptcy petition. However, the parties disagree as to how that figure should be calculated. RBLP argues that under § 502(b)(6), it is entitled to damages in the sum of $237,800. This consists of $259,419.60, the annual rent reserved under the lease, less the security deposit of $21,618.30.

FAC contends that RBLP's damage claim fails to take into account the "free rent" credit given to it by RBLP under the modification letter. Rental payments due under the modified lease (providing the free rent) for the year following FAC's bankruptcy petition equal $187,430.66. From this FAC deducts the rent paid post-petition ($64,854.90) and its security depos-

it, to arrive at a total damage claim owed RBLP of $100,957.46.

## DISCUSSION

██ The purpose of Bankruptcy Code § 502(b)(6) is two-fold. It is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate. The damages a landlord may assert from termination of a lease are limited to the rent reserved for the greater of one year or 10 percent of the remaining lease term, not to exceed three years, after the earlier of the date of the filing of the petition and the date of surrender or repossession. H.R.Rep. No. 595, 95th Cong., 1st Sess. 118, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6308–6310 (hereinafter "House Report").

Unfortunately, § 502(b)(6) provides no formula for ascertaining the allowable damages for a lessor. It merely qualifies and limits the lessor's claim to a maximum. *In re Goldblatt Bros., Inc.*, 66 B.R. 337, 345 (Bankr.N.D.Ill.1986). Ultimately, the amount of the claim is to be determined by the court in accordance with state law and the contract between the parties. *In re Thompson*, 116 B.R. 610, 613 (Bankr.S.D. Ohio 1990); *In re McLean Enter., Inc.*, 105 B.R. 928, 936 (Bankr.W.D.Mo.1989).

██ This court will first determine what actual damages would be awarded to the landlord under applicable state law for termination of the lease. Then, the court must consider the limitation on the landlord's recovery for these damages imposed by § 502(b)(6). *In re McLean Enter., Inc.,* at 936.

██ Cal.Civ.Code § 1951.2 governs the amount which a lessor may receive in damages from a lessee who breaches a real property lease. Section 1951.2(a)(2) provides that a lessor may recover the present value of all past due rent as of the date of judgment and all future rent accruing after judgment for the remainder of the lease term, although a lessor's recovery may be reduced by the amount of such rental loss that lessee proves could have been reasonably avoided. *Zanker Dev. Co. v. Cogito Sys. Corp.*, 215 Cal.App.3d 1377, 1381, 264 Cal.Rptr. 76 (1989).

Here, the total rent due to date and accruing during the lease term equals $1,052,162.70. RBLP still must make good faith and reasonable efforts to mitigate its damages. In fact, RBLP has been successful in leasing part of the subject property.[1] Any rent derived from new tenants would be deducted from RBLP's state law claim.

Bankruptcy Code § 502(b)(6) sets the maximum allowable claim as the rent reserved by the lease for one year following the date FAC filed its petition.[2] This language is plain and unambiguous. The lease agreement executed between FAC and RBLP includes both the actual lease documents and the modification letter executed the same day. Thus, in calculating the "rent reserved under the lease", the "free rent" provided for in the modification letter must be included. The rent reserved under the lease, as modified, for one year equals $187,430.66.[3]

| Period | Rent Reserved |
|---|---|
| 11/88 | $ 10,809.15 |
| 12/88 | 10,809.15 |
| 1/89 | 10,809.15 |
| 2/89 | 10,809.15 |
| 3/89 | 10,809.15 |
| 4/89 | 10,809.15 |
| 5/89 | 14,484.26 |
| 6/89 | 21,618.30 |
| 7/89 | 21,618.30 |
| 8/89 | 21,618.30 |
| 9/89 | 21,618.30 |
| 10/89 | 21,618.30 |
| TOTAL | $187,430.66 |

1. RBLP leased approximately 3,200 of the 13,000 square feet in September 1989 to a new tenant for a term of five years, at a monthly rent of $5,221. It provided rent credits to the tenant in an amount equal to $31,326, to be realized as one-half rent credit in the second through 13th months. RBLP has also pursued other tenants in an attempt to mitigate its damages.

2. The parties have stipulated that the § 502(b)(6)(A) calculation of 15 percent for the remaining term of the lease not to exceed three years is not at issue in this matter.

3. Damages calculated as follows:

■ Where actual damages exceed the statutory limit, the landlord is entitled to a claim equal to the entire amount of the limit. *In re Goldblatt Bros., Inc.,* at 346; *In re Stewart's Properties, Inc.,* 41 B.R. 353, 355 (Bankr.D.Haw.1984). RBLP's actual damages under California law equal $1,052,162.70 less any rent recovered by RBLP from re-renting the property. The statutory limit allowed under § 502(b)(6) is $187,430.66. Clearly, RBLP's actual damages are substantially more than the statutory limit. Accordingly, RBLP should be awarded the maximum damages allowed under § 502(b)(6).

This result fulfills the purpose of § 502. RBLP will receive a reasonable portion of the damages it has suffered, while at the same time allowing other unsecured creditors to recover more than a minimal portion of their claims. At first glance, it may seem harsh to limit RBLP's claim to $187,-430.66 when conceivably it would have been entitled to a state law claim of over $1 million. However,

> The landlord is not in the same position as other general creditors, and there is no very compelling reason why he should be treated on par with them. For, after all, he has been compensated up until the date of the bankruptcy petition, he regains his original assets upon bankruptcy, and the unexpired term in no way really benefits the assets of the bankrupt's estate. *Oldden v. Tonto Realty Corp.,* 143 F.2d 916, 920 (2d Cir.1944).

The legislative history of § 502(b)(6) expressly provides that the section does not overrule *Oldden* and, in fact, cites to *Oldden* for a discussion of § 502's history. House Report at 6308–6310.

■ RBLP still holds FAC's security deposit of $21,618.30. In addition, FAC paid RBLP $63,854.90 in post-petition rent. FAC correctly asserts that these monies should be applied in satisfaction of RBLP's allowable claim. Section 502(b)(6) clearly sets a limit on damages for breach of a lease by bankruptcy. By virtue of § 506(a) and 506(d), the claim will be divided into a secured portion and an unsecured portion. The security deposit will be applied in satisfaction of the secured portion of RBLP's claim allowed under § 502(b)(6).

■ FAC's post-petition rent payments should also be deducted from RBLP's maximum allowed claim. See *In re Stewart's Properties, Inc.,* 41 B.R. 353 (Bankr.D. Haw.1984), (where the court noted that the maximum amount allowable under old § 502(b)(7) [now § 502(b)(6) ] was the rent for one year from the date of filing of the petition, minus administrative rent previously paid.) If post-petition rental payments were not subtracted from the maximum allowable claim, a debtor who ceased payment of rent immediately upon filing a bankruptcy petition would be in a better position than a debtor who fulfilled his duties under § 365(d)(3). Such a result could not have been intended. The legislative history of § 502(b)(6) states that "this subsection does not apply to limit administrative expense claims for use of the leased premises to which the landlord is otherwise entitled." House Report at 6309–6310.

### CONCLUSION

For the foregoing reasons, RBLP's claim is allowed in the sum of $187,430.66. The $21,618.30 security deposit will be applied in satisfaction of the secured portion of the allowable claim. The $64,854.90 post-petition administrative rent payments will also be applied in satisfaction of the claim. The remaining $100,957.46 will be allowed as a pre-petition unsecured claim.

Counsel for RBLP is directed to prepare and submit an order in conformance with this Memorandum Decision within ten (10) days of its entry.