Chad DeROSIER, Respondent,

v.

UTILITY SYSTEMS OF AMERICA,
INC., Appellant.

No. A09–879.

Court of Appeals of Minnesota.

March 2, 2010.

Sean M. Quinn, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, MN, for respondent.

Robert H. Magie, III, Duluth, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; SCHELLHAS, Judge; and STAUBER, Judge.

## OPINION

MINGE, Judge.

Appellant contractor challenges the district court award of actual and consequential damages for breach of an oral contract. We affirm in part and reverse in part.

## FACTS

Respondent Chad DeRosier purchased undeveloped hillside property in Duluth with plans to construct a house. The property sloped steeply down from the street, requiring substantial fill. Because appellant Utility Systems of America, Inc. (USA) was excavating at a nearby road construction project, DeRosier approached USA's foreman in July 2004, explained his need for fill, and proposed that USA dump fill material on his property. The foreman agreed on condition that DeRosier obtain the proper permits. USA did not charge DeRosier because the arrangement allowed USA to avoid the cost of hauling and disposing of the excavated material at a more distant location. There was no written contract.

In late August 2004, DeRosier obtained a city permit allowing for the deposit of 1,500 cubic yards of fill, gave the USA foreman a copy of the permit, and left for a ten-day vacation. When DeRosier returned from vacation, his entire property was covered with fill. The estimated quantity was 6,500 cubic yards (or around 5,000 cubic yards above the permitted amount). The contractor who DeRosier originally retained to construct his house determined that he could not build until the excess fill was removed, estimated that the cost of removal would be at least $20,000, and withdrew as builder.

DeRosier complained to USA that its mistake in dumping excess material delayed construction, explained that he faced substantial removal costs, and demanded corrective action. USA denied liability, claiming that DeRosier failed to (1) provide a copy of the city permit; (2) advise it of the limit on fill; or (3) perform city-required compaction. A letter from DeRosier's counsel repeated the complaints and demanded that USA remove the extra fill under threat of lawsuit. USA responded by again denying responsibility but offering to remove the excess fill for $9,500, which it claimed were its costs. DeRosier refused to pay USA and hired G & T Construction to remove the excess fill.

DeRosier sued USA, requesting damages of $46,629 for the cost of removing the excess fill and for added expenses in constructing the foundation of the house. Following trial, the district court concluded that USA breached a contract to deposit 1,500 cubic yards of fill. It ordered USA to pay general damages of $22,829 [1] and consequential damages of $8,000. USA appeals.

---

1. The district court appears to have under calculated the general damages by $30. The general-damage amount was based on $21,629 in removal costs (as testified by Johnson) plus $1,230 for the cost of trucks rented to haul excess fill. These amounts add up to $22,859, or $30 more than the $22,829 awarded as general damages. This miscalcu-

lation was first made by DeRosier in his proposed findings, was adopted by the district court, and is not challenged by DeRosier. We therefore accept the consequential damage award as specified in paragraph 20 of the district court's January 8, 2009 Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment.

## ISSUES

1. Did the district court err by awarding consequential damages of $8,000?

2. Did the district court abuse its discretion by awarding general damages of $22,829?

3. Did DeRosier have an obligation to mitigate damages by accepting USA's offer to remove the excess fill for $9,500, which was less than what DeRosier ultimately paid?

## ANALYSIS

USA challenges the district court's damage award on several fronts. In reviewing a district court's award of damages, the court of appeals does not overturn findings unless the district court abused its discretion. *In re Trusteeship of Trust of Williams,* 631 N.W.2d 398, 407 (Minn.App. 2001), *review denied* (Minn. Sept. 25, 2001). Questions of law are reviewed de novo. *Alpha Real Estate Co. v. Delta Dental Plan,* 664 N.W.2d 303, 311 (Minn. 2003).

### I.

The first issue raised by USA is whether the district court erred in awarding consequential damages to DeRosier for delayed construction. USA argues that consequential damages were not alleged in the complaint, disclosed in discovery, or supported by any specific evidence presented at trial. Questions regarding what must be specifically pleaded are legal issues which we review de novo. *See In re Milk Indirect Purchaser Antitrust Litigation,* 588 N.W.2d 772, 774 (Minn.App.1999) (noting that whether antitrust claims are subject to a heightened pleading standard is a legal issue reviewed de novo).

Minnesota pleading rules generally require only "a short and plain statement of the claim" and "a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01. The rules, however, specify that "special damage[s] ... shall be specifically stated." Minn. R. Civ. P. 9.07. In discussing damages incident to the Uniform Commercial Code, the supreme court stated: "[A]lthough remedies are to be liberally administered, the burden of *pleading* and proving consequential loss still remains on the buyer [alleging the damage]." *Bemidji Sales Barn, Inc. v. Chatfield,* 312 Minn. 11, 15, 250 N.W.2d 185, 188 (1977) (quotations and citations omitted) (emphasis added). To understand the phrase "consequential loss" or "consequential damages" and the issue before us, we must recognize the difference between *general* and *special* damages. Special damages require specific pleading but general damages do not. David F. Herr & Roger S. Haydock, 1 *Minn. Practice* 288–90 (5th ed. 2009).

General damages, as opposed to special damages, "naturally and necessarily result from the act complained of." *Indep. Brewing Ass'n v. Burt,* 109 Minn. 323, 327, 123 N.W. 932, 934 (1909). Minnesota courts have stated, "[t]he term 'consequential damages' usually ... refers to those items of damages which, because of particular circumstances, are to be distinguished from 'general' damages." *B.F. Goodrich Co. v. Mesabi Tire Co.,* 430 N.W.2d 180, 184 (Minn.1988); *see also Imdieke v. Blenda–Life, Inc.,* 363 N.W.2d 121, 125 (Minn. App.1985) (analyzing general damages separate from consequential damages), *review denied* (Minn. Apr. 26, 1985). Consequential damages are commonly called special damages. 22 Am. Jur. 2d *Damages* § 629 (2009). Special damages are the natural, but not the necessary, result of a breach. *Smith v. Altier,* 184 Minn. 299, 300, 238 N.W. 479, 479 (1931). Although special or consequential damages flow naturally from the breach, they are not recoverable unless

they are reasonably foreseeable to the parties at the time of the breach. *County of Blue Earth v. Wingen*, 684 N.W.2d 919, 924–25 (Minn.App.2004).

In this case the district court relies on the following rule to allow the recovery:

> If evidence is objected to at the trial on the ground that it is not within the issues raised by the pleadings, the court *may allow the pleadings to be amended and shall do so freely* when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admission of such evidence would prejudice maintenance of the action or defense upon the merits.

Minn. R. Civ. P. 15.02 (emphasis added). However, this portion of rule 15.02 concerns amendment of pleadings, which never occurred in this case. Another portion of rule 15.02 allows recovery for unpleaded damages when the defendant litigates the issue by consent (i.e., raises substantive defenses and fails to object to evidence concerning the claim). *See Shandorf v. Shandorf*, 401 N.W.2d 439, 442 (Minn.App. 1987). But the record of this trial does not indicate that litigation by consent occurred. At the outset of trial, USA's counsel pointed out that there was no claim for delay damages in the pleadings or discovery. Perhaps most significantly, no evidence of monetary loss caused by delay was introduced at trial. Although the district court observed that DeRosier's attorney specifically mentioned delay in his prelitigation demand, that did not constitute evidence of such damages. In sum, there was no occasion for USA to object to evidence that would support the claim.

Because consequential (or delay) damages were not pleaded and not supported

by any evidence in the record, we conclude that the district court erred in awarding DeRosier $8,000 as consequential damages for delay in construction and we reverse that portion of the judgment.

## II.

■ The second issue raised by USA is whether the record contains sufficient evidence to support the award of general damages. The plaintiff must establish a reasonable basis for approximating a loss. *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 579 (Minn.App.2004). Damages cannot be "speculative, remote, or conjectural." *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn.1977) (quotation omitted). A reviewing court will defer to the district court's credibility determinations. Minn. R. Civ. P. 52.01. We extend this deference to the evaluation of written statements and testimonial depositions. *See Straus v. Straus*, 254 Minn. 234, 235, 94 N.W.2d 679, 680 (1959) ("Conflicts in the evidence, even though the presentation is upon affidavits, are to be resolved by the trial court.").

DeRosier's primary witness regarding the cost of removal was G & T owner Dan Johnson, who testified by deposition.[2] USA claims that Johnson provided vague, guesswork testimony. We note that the record includes Johnson's invoices referencing work undertaken and machinery used to remove the fill. Johnson referred to these invoices and testified regarding various handwritten notes and calculations that appear on added pages of the exhibit. Although Johnson's testimony and notes contain ambiguities when considered separately, taken together they provide substantial, understandable detail. Johnson admitted that his measurements were not

---

2. There is no issue regarding the proper qualification of Johnson's deposition as a part of the trial record. It was presented to the district court and DeRosier's legal counsel argued extensively regarding its significance.

exact. However, based on his experience and the recorded invoices, Johnson provided details regarding the amount of fill hauled away, the items of equipment used, the time it took, and the equipment and labor expense. With this context, we conclude the evaluation of Johnson's deposition was a credibility determination for the district court.

USA also argues that the district court's damage award includes various costs that are DeRosier's responsibility. These allegedly extra costs include excavation at the site that was necessary for the construction, removal of vegetation, and compaction of the fill. USA does not clearly identify any specific portion of Johnson's testimony or exhibits that involve work for such tasks or was otherwise unrelated to removal of excess fill deposited by USA. In fact, the record indicates that G & T's total charges for excavating and moving fill, sod, and other materials at the property was $29,189. Of this amount $7,560 was deducted as unrelated to excess-fill removal. The damage award only accounted for the cost of G & T's removal work plus the renting of additional trucking services for hauling the excess fill. We also note that the original contractor estimated the removal cost would exceed $20,000 when he first evaluated the situation.

Based on the record and the deference we afford the fact finder, we conclude the district court had a sufficient basis for calculating and did not abuse its discretion in granting $22,829 in general damages.

### III.

▇▇▇ The third issue is whether DeRosier had a duty to mitigate damages that was breached by his failure to accept USA's offer to remove excess fill for $9,500. USA claims that, even if the actual-damage award was supported by the evidence, recoverable damages are limited to its $9,500 offer.[3] DeRosier responds that he was not obligated to do business with USA after its breach and that such an arrangement would have jeopardized his ability to sue by acting as a form of settlement. Whether damages are subject to mitigation is a question of law we review de novo. *See Snyder v. City of Minneapolis*, 441 N.W.2d 781, 789 (Minn.1989) ("[W]hether the trial court's theory of valuation of damages is speculative or erroneous is a question of law.").

▇▇▇ We first note that if USA had merely offered to cure, DeRosier would have been obliged to accept to mitigate damages. *See Bruner & O'Connor on Construction Law* § 19:21 (2002) (noting that right to cure serves policy of mitigating damages). An implied right to cure exists in situations where cure is possible. *See Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn.1984) (finding no error in jury instruction stating contractor had right to enter premises and cure defects if he had substantially completed project and received notice of defect); *Bruner & O'Connor on Construction Law* §§ 18:41, 19:21 (recognizing common-law implied right to cure). Upon receiving proper notice, a party that defectively performs may cure if done within a reasonable time and there is adequate assurance of performance. *See* Restatement (Second) of Contracts § 237 cmt. 6 (1979) (noting that nonbreaching party is not relieved of duty to perform until defect can no longer be cured); *id.* § 350 cmt. g ("[I]t is reasonable for the injured party to rely on performance by the other party even after breach [when] ... the breach is accompa-

---

**3.** It is unclear whether $9,500 was akin to a settlement offer or only represented USA's minimal marginal costs. There is no claim that $9,500 would be the fair market charge for the work, even for work done by USA.

nied by assurances that performance will be forthcoming."). We further note that Minnesota statutes concerning residential construction require vendees to provide notice of and opportunity to repair defects within a reasonable time following home-sale or home-improvement contracts. Minn.Stat. §§ 327A.02, .03 (2008).

Here, DeRosier notified USA of the defective performance, requesting that the excess fill be removed under threat of lawsuit. *See Blaine Econ. Dev. Authority v. Royal Elec. Co.*, 520 N.W.2d 473, 477 (Minn.App.1994) (stating requirements for effective notice). USA, however, only offered to fix the fill problem on condition that DeRosier make further payments. A breaching party may not insist that the damaged party pay additional compensation to correct work for which the breacher had already been fully paid to perform. 22 Am. Jur. 2d *Damages* § 358 (2009). Although USA had not received monetary payment for its work, it had benefited from its agreement with DeRosier and the absence of a monetary payment is not a material distinction. We conclude that because USA did not attempt to cure, but rather proposed a new contract with new consideration, USA waived its right to cure.

Nevertheless, DeRosier may still have had an obligation to enter into that new contract if such a step was a reasonable way to mitigate damages. *County of Blue Earth v. Wingen*, 684 N.W.2d at 924; Restatement (Second) of Contracts § 350 (1979). Acceptance of USA's offer would have saved DeRosier over $13,000. The issue, then, is whether rejection of that offer was unreasonable.

Outside of employment situations, one reported Minnesota court decision has considered whether it is unreasonable to reject a breaching party's subsequent offer that would mitigate damages. *Coxe v. Anoka Waterworks Elec. Light & Power*

*Co.*, 87 Minn. 56, 91 N.W. 265 (1902). In *Coxe*, the supreme court held that a buyer who contracted to purchase goods on credit did not have to accept an offer of the same goods for a cheaper cash price. *Id.* at 57–58, 91 N.W. at 265–66. The court reasoned that imposing the new contract as a mitigation requirement would "entirely abrogate[ ] the contract as made by the parties, and force[ ] upon them another and wholly different one, made by the court." *Id.* at 58, 91 N.W. at 266. The rationale of *Coxe* would not require such agreements to mitigate, especially where the new contract would supplant the old one without preserving a right to enforce the original agreement.

Other states have faced the issue and have held that the nonbreaching party can recover its full damages despite refusing the breacher's new offer that would have minimized the loss. *See Zanker Dev. Co. v. Cogito Sys., Inc.*, 215 Cal.App.3d 1377, 1382, 264 Cal.Rptr. 76 (1989) (holding that landlord need not mitigate damages by reletting to tenant that repudiated lease); *Stanley Manly Boys' Clothes, Inc. v. Hickey*, 113 Tex. 482, 259 S.W. 160, 162 (1925) (stating that no one "should be required to contract a second time with one who has without cause breached a prior contract with him"); *City Nat'l Bank v. Wells*, 181 W.Va. 763, 384 S.E.2d 374, 384 (1989) ("[T]he plaintiff here justifiably revoked his acceptance of the defective truck and had no obligation to afford the defendant yet another opportunity to repair it.").

We conclude that when one party to the contract defectively performs and subsequently offers to correct the breach through a new contract, the non-breaching party may generally decline the offer and still recover its full damages. Special circumstances may rebut the reasonableness of the rejection and call for exceptions to this rule. *See* Hilman, Keeping the Deal Together After Material

Breach, 47 *U. Colo. L.Rev.* 553, 573 (1973) (listing factors to consider when gauging reasonability of accepting or rejecting breacher's subsequent offer). The facts before us support DeRosier's decision: (1) the $9,500 payment demanded was substantial; (2) DeRosier was not unreasonable in believing that acceptance could constitute an accord and satisfaction;[4] (3) other hauling services were readily available; and (4) DeRosier's relationship with USA was strained as USA was blaming DeRosier.

On this record, we conclude that DeRosier did not have an obligation to accept USA's $9,500 offer and that DeRosier is entitled to the costs he incurred in using others to remove the excess fill.

## DECISION

Although the district court erred in awarding DeRosier $8,000 in consequential damages, the district court did not abuse its discretion in awarding DeRosier general damages. DeRosier did not unreasonably reject USA's $9,500 offer, and therefore did not improperly fail to mitigate his general damages. We modify the judgment to the amount of the award for general damages: $22,829.[5]

**Affirmed in part and reversed in part.**

---

4. "Accord and satisfaction acts to discharge a contract or a cause of action. It is itself an executed contract, and it may be expressed or implied from circumstances which clearly and unequivocally indicate the intention of the parties." *Roaderick v. Lull Eng'g Co.*, 296 Minn. 385, 389, 208 N.W.2d 761, 764 (1973). Although it is not evident that USA intended the new offer to constitute accord and satisfaction, DeRosier claims he feared that a new agreement might constitute a waiver of his rights under his original contract. That risk

is material when considering the reasonability of his rejection of USA's offer.

5. The district court's January 8 order awarded $22,829 in general damages, awarded $8,000 in consequential damages, and combined the two damages figures for a total of $30,289, apparently transposing two figures. The correct sum is $30,829. Because we reverse the award of consequential damages and accept the district court's $22,829 award for general damages, this clerical error is not further addressed.